STATE ex rel. Ramsey MUNN, Relator,

v.

Honorable Richard B. McKELVEY,
Judge, Circuit Court of Jackson
County, Respondent.

No. 69029.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

James L. McMullin, K. Louis Caskey, Kansas City, Mo., for relator.

Robert Frager, Asst. Pros. Atty., Albert A. Riederer, Pros. Atty., Kansas City, Mo., for respondent.

BILLINGS, Chief Justice.

Relator Ramsey Munn seeks to prevent respondent, the Honorable Richard B. McKelvey, Judge of the Circuit Court of Jackson County from enforcing an order directing relator to answer questions posed to him during a deposition by the State of Missouri. The primary question presented is whether, upon the state's offer to grant a witness immunity from criminal prosecution in return for his testimony, a Missouri court can deny the witness his constitutional privilege against self-incrimination and compel him to testify. Because this Court determines that Missouri prosecutors have no authority, either statutory or inherent, to grant such immunity, the preliminary order is made absolute.

On September 4, 1986, at 2220 Vine Street, Kansas City, Missouri, relator witnessed the events leading up to the shooting death of Robert Cooper. Several days later, relator gave a signed statement to Kansas City police officers in which he reported his observations concerning the shooting. In the course of his statement,

relator mentioned that he was employed at the establishment located at 2220 Vine Street in which the shooting occurred. At a hearing, a Kansas City police officer testified that there is evidence that this establishment on Vine Street is an illicit gambling den in which alcoholic beverages may also be unlawfully purchased. Relator's primary duty at the Vine Street establishment, according to his statement to the police, is to search patrons, presumably for weapons, as they enter. The statement also indicates that on the night of the shooting, relator accepted a delivery of beer to the Vine Street establishment and iced it down.

Subsequent to the giving of his statement, relator was subpoenaed by the State of Missouri to give his deposition in the state's case against Leon Gunn. Gunn has been charged with the first degree murder of Robert Cooper. Relator appeared at the appointed time and place, but, invoking his constitutional privilege against self-incrimination, he refused to testify as to the events surrounding Cooper's shooting. The state then moved to compel relator to testify. At a hearing on the motion, before respondent Judge Richard B. McKelvey, relator again refused to answer the state's questions about the shooting.

The assistant prosecuting attorney then took the stand and testified that he was empowered by the Jackson County prosecutor to grant relator immunity from prosecution in return for his testimony. Under the proposed immunity agreement, relator would be promised that neither the Jackson County Prosecutor's Office nor any other office within the State of Missouri would prosecute relator on the basis of his testimony or conduct any investigation of relator on the basis of the testimony.

The prosecution also presented testimony from the city prosecutor for Kansas City and an assistant United States Attorney for the Western District of Missouri. The city prosecutor testified that he was also prepared to immunize relator from prosecution by the city based upon his testimony or evidence derived therefrom. The assistant United States attorney testified that she too was authorized to grant relator immunity from any federal prosecution within the Western District based upon his testimony or the fruits thereof. She also indicated that the immunity she was offering was not immunity under the federal immunity statute, 18 U.S.C. §§ 6001–03 (1982), which requires federal judicial approval, but rather immunity granted solely under the authority of her office and without the approval of a federal judge.

After hearing these offers of immunity, made under oath, respondent, despite reservations, held that "the immunity is valid" and, therefore, that "there is no possibility as a matter of law that the questions asked and responses that would be given could incriminate [relator]." Respondent then brought relator back to the stand, told him that the immunity offered would prevent any of his answers to deposition questions from incriminating him, and that, if he now refused to answer the state's questions, he would be found in contempt and incarcerated until such time as he purged the contempt by answering the questions. Relator again refused to answer any questions on the ground that his answers might incriminate him. Respondent thereupon found relator in contempt and ordered him committed to jail until he purged himself of the contempt. Respondent, however, stayed execution so that relator could seek a writ of prohibition.

Relator promptly sought such a writ from the Missouri Court of Appeals, Western District. A three judge panel, with one member dissenting, denied relator's petition. This proceeding in this Court followed.

■ The privilege against self-incrimination is secured by the Fifth Amendment to the United States Constitution and by Article I, section 19 of the Missouri Constitution. The principles to be followed in applying these two provisions are consistent. *See State ex rel. Harry Shapiro, Jr., Realty & Inv. Co. v. Cloyd*, 615 S.W.2d 41, 46 (Mo. banc 1981); *Cantor v. Saitz*, 562 S.W.2d 774, 777 (Mo.App.1978) (disapproved of in *Cloyd*, 615 S.W.2d at 45–46, on other grounds).

A witness' privilege against self-incrimination "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). *See also State ex rel. North v. Kirtley*, 327 S.W.2d 166, 167 (Mo. banc 1959). The privilege extends not only to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in the chain of evidence needed to convict the witness. *E.g., Kirtley*, 327 S.W.2d at 168. Once a witness invokes his constitutional privilege against self-incrimination, a rebuttable presumption arises that his answer might tend to incriminate him. This presumption can be rebutted by a demonstration by the questioner that the answer cannot possibly have a tendency to incriminate the witness. Only after the questioner makes such a demonstration may a court compel an answer to the question in derogation of the privilege against self-incrimination *Cloyd*, 615 S.W.2d at 46.

When relator here claimed his privilege against self-incrimination, the prosecutors did not, and respondent does not now, argue that, judging by the content of his expected testimony alone, he cannot possibly incriminate himself. In fact, it appears that relator's expected testimony would have a tendency to incriminate him. If compelled to testify, relator's testimony would probably mirror his statement to the police, in which he admitted working at an establishment suspected of housing illegal gambling activities and liquor sales. Additionally, during the proposed deposition, the state or the defendant might delve more deeply than did the police officer who took relator's statement, and thus bring to light further evidence connecting relator to unlawful activities. At the very least, it cannot be said that relator's anticipated answers could not possibly provide a necessary link in a chain of evidence sufficient to result in his conviction of a crime.

Rather than premising their argument that relator could not possibly incriminate himself in answering questions at the proposed deposition on the content of his expected testimony, the prosecutors at the hearing argued that the immunity offered to relator would absolutely prevent him from incriminating himself. It was this offered immunity on which respondent based his finding that the prosecutors had rebutted the presumption, which arose on relator's claim of the privilege against self-incrimination, that relator's answers at the proposed deposition would tend to incriminate him. And it was this finding which underlay respondent's order that relator answer the prosecution's questions. The decisive issue, then, is whether a prosecutor has the authority to grant immunity from criminal prosecution to a witness.

Although Missouri does have several statutes which require witnesses to testify with respect to particular topics in return for immunity from prosecution, *see, e.g.,* §§ 136.100.2, 386.470, and 409.407(e), RSMo 1986 (relating respectively to investigations by the director of revenue, the public service commission, and the commissioner of securities), there is no statute endowing prosecutors with the general authority to immunize witnesses from prosecution. Attempts have been made for at least 16 years to enact a statute granting prosecutors such authority, but these attempts have been unsuccessful.[1] Recognizing this lack of express authority, respondent here contends, as did the prosecution below, that prosecutors possess the inherent power to grant immunity.

No Missouri court has answered the question of whether prosecutors possess inherent authority to immunize witnesses from prosecution. This Court has, however, held that promises of immunity are

---

1. In 1987, in the most recent session of the General Assembly, H.B. No. 173, 84th Gen. Assembly, 1st Reg. Sess., proposed that prosecutors be authorized to make grants of immunity with court approval. The bill died in committee.

not binding and constitute no bar to a subsequent prosecution of the immunized witness. *See State v. Crow*, 367 S.W.2d 601, 605 (Mo.1963) (promise made by sheriff); *State v. Myers*, 330 Mo. 84, 94, 49 S.W.2d 36, 40 (1932) (promise made by attorney general); *State v. Guild*, 149 Mo. 370, 376, 50 S.W. 909, 910 (1899) (promise made by prosecuting attorney). Implicit in these decisions is a long-standing hostility toward prosecutorial imunity by this Court. Although the common holdings of *Crow*, *Myers*, and *Guild* may now be questionable, *see Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)., and *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 347, 83 S.Ct. 448, 499–500, 9 L.Ed.2d 357 (1963), discussed below, this Court's position concerning prosecutorial immunity remains unchanged.

Courts in other jurisdictions have directly addressed the issue of the existence of inherent prosecutorial authority to grant immunity and the general rule is that a prosecutor is not empowered, solely by virtue of his office, to confer immunity upon a witness. 81 Am.Jur.2d Witnesses § 57 (1976). Most courts which have held that prosecutors have no inherent authority to grant immunity have done so on the ground that the question as to when immunity may be obtained is to be answered exclusively by the legislature. *See Higdon v. State*, 367 So.2d 991, 993 (Ala.Crim.App. 1979); *Commonwealth v. Brown*, 619 S.W.2d 699, 701–02 (Ky.1981) (overruled with respect to a different issue in *Murphy v. Commonwealth*, 652 S.W.2d 69, 72–73 (Ky.1983), *cert. denied*, 465 U.S. 1072, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984)); *Bowie v. State*, 14 Md.App. 567, 575, 287 A.2d 782, 787 (1972); *Grand Jurors v. Wallace*, 369 Mass. 876, 879, 343 N.E.2d 844, 846 (1976); *Apodaca v. Viramontes*, 53 N.M. 514, 518, 212 P.2d 425, 430 (1949); *Doyle v. Hofstader*, 257 N.Y. 244, 260, 177 N.E. 489, 495 (1931) (issue was whether a legislative committee could grant immunity, but rule stated is broad enough to cover prosecutors too). In other words "[i]mmunity is exclusively a creation of statute and can only exist where a statute has brought it into being." *Bowie*, 14 Md.App. at 575, 287 A.2d at 787. And, as stated by Chief Judge Cardozo for the New York Court of Appeals in *Doyle*, 257 N.Y. at 261, 177 N.E. at 495:

> Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the law-making department of the government is entitled to be heard.

This Court agrees that the decision as to when immunity may be obtained is best left to the legislature.

> Offering immunity … is a dangerous practice, human nature being what it is, and is a clear invitation to [witnesses] to commit perjury. It is the kind of practice too, that is certain to be abused by law enforcement officials to the detriment of innocent people.

*Commonwealth v. Brady*, 228 Pa.Super 233, 234, 323 A.2d 866, 867 (1974). Given that the immunity power is subject to such abuse, this Court concludes that this power does not inher in the office of prosecutor, but rather that Missouri prosecutors may obtain the authority to grant immunity only after legislative deliberation and the approval of carefully drawn legislation.[2]

This conclusion is not contrary to *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) or *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) or their progeny. In *Santobello*, the prosecutor promised not to make a sentencing recommendation if the defendant would plead guilty. The defendant accepted the offer and pleaded

---

**2.** This conclusion applies both with respect to use and derivative use immunity, as was offered here, and with respect to transactional immunity. Use and derivative use immunity is "immunity from the use of compelled testimony and evidence derived therefrom" *Kastigar v. United States*, 406 U.S. 441, 452–53, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). Transactional immunity is broader in that it is "full immunity from prosecution for the offense to which the compelled testimony relates." *Id.* at 453, 92 S.Ct. at 1661.

guilty, but, at sentencing, a different prosecutor recommended that the defendant receive the maximum sentence. The maximum sentence was imposed, but the Supreme Court vacated the judgment, holding that the state was bound by the first prosecutor's promise. 404 U.S. at 262–63, 92 S.Ct. at 499. In *Shotwell,* the Supreme Court held that where evidence of guilt is induced under a governmental promise of immunity, the evidence must be excluded under the self-incrimination clause. 371 U.S. at 347, 83 S.Ct. at 453.

*Santobello* and *Shotwell* have inspired subsequent decisions which have developed the doctrine of equitable immunity. Under this doctrine the government is required by due process as well as equity, to honor its agreements to grant immunity "when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government." *Rowe v. Griffin,* 676 F.2d 524, 527–28 (11th Cir.1982).

 The purpose of the doctrine of equitable immunity is to preserve the integrity of the government by requiring the government to fulfill promises of immunity made by its agents, the prosecutors, once the witnesses have testified in reliance on the promise. This is not the issue in this case, however. There has been no reliance on the promise of immunity. The witness refuses even to accept the offer of immunity. The government's integrity is not on the line. The issue here, rather, is whether the prosecutor has the authority to promise immunity in the first place. This Court holds that prosecutors have no such authority and nothing in the equitable immunity cases is contrary to this holding. Those cases confer no authority upon prosecutors.

There remains the question of the effect of the assistant United States attorney's offer of immunity to relator. While federal prosecutors do have statutory authority to immunize witnesses in consideration for their testimony, *see* 18 U.S.C. §§ 6001–03 (1982), the federal immunity offered admittedly was not immunity pursuant to this statute. Rather, the immunity was to be given directly from the United States Attorney's Office. So the question becomes whether federal prosecutors have the inherent authority to grant immunity. Federal courts are split on this question. *Compare, e.g., United States v. Donahey,* 529 F.2d 831, 832 (5th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) *and United States v. Gorham,* 523 F.2d 1088, 1096 (D.C.Cir.1975) *with United States v. Levy,* 153 F.2d 995, 997 (3rd Cir. 1946) *and In re Kelly,* 350 F.Supp. 1198, 1200 (E.D.Ark.1972).

 Even assuming the federal prosecutor had inherent authority to grant immunity here, it was not sufficient to overcome relator's privilege against self-incrimination. First, under cross-examination the assistant United States attorney stated that the immunity offered was granted only to the extent of the jurisdiction of the Western District of Missouri. Relator was thus justified in the belief that he could be prosecuted in other districts with respect to crimes he might link himself to in his testimony. Where a witness reasonably apprehends a risk of self-incrimination despite a grant of immunity he may properly invoke the privilege against self-incrimination. *United States v. D'Apice,* 664 F.2d 75, 78 (5th Cir.1981). Second, and more generally, even if the federal grant of immunity was binding in all federal districts it provided no immunity from prosecution for state crimes. *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), is not to the contrary. Implicit from *Murphy* is the rule that testimony elicited in a federal proceeding under a federal grant of immunity, and the fruits therefrom, may not be used in a subsequent state prosecution. *See id.* at 77–79, 84 S.Ct. at 1608–10. This rule that federally immunized testimony may not be used in a state prosecution does not apply here because the testimony sought was to be elicited in a state proceeding not a federal one. It is not the intent or the require-

ment of *Murphy* that state prosecutors be permitted to avoid their own lack of authority to grant immunity in state proceedings by the expedient of calling in a federal prosecutor to grant immunity.

█ As this Court concludes that the Missouri prosecutors in this case had no authority, either statutory or inherent, to grant immunity to relator and that the federal prosecutor's grant of immunity, even if valid, provided no immunity to relator from state prosecution, the prosecutors failed to rebut the presumption, which arose on relator's invocation of his privilege against self-incrimination, that relator's answers might tend to incriminate him. Because this presumption was not rebutted, respondent's order to relator that he answer the questions improperly forced relator to choose between being jailed for contempt or foregoing his constitutional privilege against self-incrimination. *See State ex rel. Harry Shapiro, Jr., Realty and Inv. Co. v. Cloyd,* 615 S.W.2d 41, 46 (Mo. banc 1981). Respondent was without jurisdiction to force this choice on relator. *State ex rel. Flynn v. Schroeder,* 660 S.W.2d 435, 437 (Mo.App.1983). *See also Cloyd,* 615 S.W.2d at 46.

█ Prohibition lies only where an act in excess of jurisdiction is clearly evidenced, *e.g., State ex rel. Clem Trans. Inc. v. Gaertner,* 688 S.W.2d 367, 368 (Mo. banc 1985), and where there is no adequate remedy by way of appeal, *e.g., State ex rel. McNary v. Hais,* 670 S.W.2d 494, 496–97 (Mo. banc 1984). As stated above, respondent acted without jurisdiction. Because relator is not a party to the underlying proceeding here, he has no remedy by appeal or otherwise. *Flynn,* 660 S.W.2d at 436. Prohibition is therefore a proper remedy in this case to prevent respondent from enforcing his order that relator answer the prosecution's questions.

Writ made absolute.

All concur.