Lynn L. BROWN, Plaintiff–Appellant,

v.

CITY of NORTH KANSAS CITY, Missouri, et al., Defendants–Respondents.

No. WD 41386.

Missouri Court of Appeals, Western District.

Aug. 1, 1989.

Motion for Rehearing and/or Transfer to Supreme Couert Denied Oct. 31, 1989.

Application to Transfer Denied Dec. 12, 1989.

Richard Helfand, Kansas City, for plaintiff-appellant.

David M. Harding (argued) and Mary E. Murphy, Kansas City, for respondents Police & Fire Bd. of North Kansas City, Joseph Bowser, Jack Hiatt, Lindsay McFerrin, Edgar Mann, James Dyer, Jr.

S. Preston Williams and Thomas E. Barzee (argued) N. Kansas City, for respondents City of N. Kansas City, Scharz, Ryder, Bledsoe, Goodman, Richards, Dyer, Owen, Schroeder and Hoffman.

Before BERREY, P.J., NUGENT, C.J., and MANFORD, J.

NUGENT, Chief Judge.

Plaintiff, Sgt. Lynn Brown, appeals from the trial court's decision affirming his dismissal from the North Kansas City Police Department (NKCPD). He argues on appeal that no substantial evidence supports the conclusion that he failed to cooperate

with his employer in an internal investigation; that his dismissal for refusing to answer particular questions violated his constitutional privilege against self-incrimination; and that the questions did not relate to his official duties. We affirm.

The NKCPD fired Sgt. Brown for refusing to cooperate in an internal investigation. The inquiry concerned allegations of his involvement in a kidnapping in Springfield, Missouri. Sgt. Brown had joined forces with a former North Kansas City police officer to investigate the kidnapping victim's involvement in an extortion scheme. The victim told police that the two officers abducted him at gunpoint, beat him with a flashlight, and left him on a country road.

In the course of its criminal investigation, the Springfield police department contacted the North Kansas City police chief about the incident, and the NKCPD provided Springfield authorities with a photograph of Sgt. Brown. When the chief told the plaintiff about the allegations, Sgt. Brown referred to it as "no big deal." At that time, the chief placed the sergeant on the first of four seven-day suspensions with pay. When the chief sought to question Sgt. Brown further about the incident, the sergeant asserted his Fifth Amendment rights.

Although the chief had assured the sergeant that nothing he told the department in the course of its official investigation could be used in a criminal prosecution, the sergeant, on the advice of counsel, persisted in declining to answer. Plaintiff's counsel told the chief that she could not assure her client that any information he gave the department would not be subject to subpoena. The chief disagreed. Departmental regulations provide that refusal to cooperate in an investigation of city matters constitutes grounds for discipline. Following Sgt. Brown's continued refusal to answer questions concerning the incident, the city council fired him. That decision survived review by the city's personnel board and by the circuit court.

Sgt. Brown argues in his first point on appeal that proof that he asserted of his Fifth Amendment rights in response to the chief's questions did not amount to sufficient evidence to support the court's finding that he refused to cooperate in the investigation. In his second point, he contends that his dismissal under those circumstances violated his constitutional privilege against self-incrimination. Because those points require an understanding of the same body of constitutional law, we shall consider them together.

The controlling law on this issue arises from the United States Supreme Court decision in *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In that case, police officers faced the choice of testifying before a grand jury investigating charges of corruption or losing their jobs under a statute that provided for removal of any public employee who refused to testify about matters concerning his employment. The officers testified and the state later used their testimony in the course of their criminal prosecution. The Court found that the threat of being fired for their silence provided adequate coercion to render the officers' testimony involuntary. Thus, the state's admission of the testimony violated the officers' rights under the Fourteenth Amendment (incorporating the rights available under the Fifth Amendment). *Id.* at 497–98, 87 S.Ct. at 618–19.

In *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), the police department fired an officer who refused to sign a waiver of immunity before testifying. The New York courts attempted to distinguish *Garrity,* observing that Gardner had refused to testify. Therefore, unlike the officers in *Garrity,* he provided no compelled testimony that the state could use against him in a criminal prosecution. The Court rejected that argument, citing *Garrity* for the proposition that the state may not require a public employee to choose between his job and his constitutional right against self-incrimination. *Id.* 392 U.S. at 278, 88 S.Ct. at 1916.

■ The Court did not, however, create an absolute right to refuse to cooperate with an internal investigation. Public au-

thorities may require a public employee to respond to questions concerning the performance of his official duties; but they may require such a response only if they do not also require the employee to waive his constitutional protection against self-incrimination. *Id.; see also Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 285, 88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089 (1968) (although the city could require public employees to account for their performance of their public trust, it could not do so by requiring the employees to waive their constitutional rights). Similarly, in *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Court held that the state may compel the employee to testify only if it provides the employee with immunity sufficient to supplant the privilege against self-incrimination. Use immunity, which entails the suppression of any statements or their fruits in a criminal prosecution, adequately replaces the constitutional privilege. *Id.* at 85, 94 S.Ct. at 326.

Sgt. Brown argues, however, that he did not receive adequate assurances of immunity to justify the conclusion that he improperly relied on his Fifth Amendment rights. The language of *Lefkowitz v. Turley* might suggest that the public entity may obtain potentially incriminating information from a public employee who asserts his constitutional privilege only if the state affirmatively grants that employee immunity. In light of the Missouri Supreme Court's decision in *State ex rel. Munn v. McKelvey,* 733 S.W.2d 765 (Mo.1987) (en banc), a question arises whether public employers may obtain such information in Missouri.

The conflict in *McKelvey* arose when a grand jury witness continued to assert his privilege against self-incrimination, even after the prosecutor had secured promises from city and federal prosecutors that no one would prosecute the witness for matters arising from his testimony. Upon his refusal to testify, the trial court cited him for contempt.

The Supreme Court reviewed Missouri's well-known historical disdain for immunity, citing cases in which the courts had upheld convictions from prosecutions that state officials had promised would never occur. It rejected the argument that the power to grant immunity inheres in the office of the prosecutor. The decision to provide immunity entails consideration of important public policies. Because the legislature has repeatedly refused to provide prosecutors with statutory authority to confer immunity, it has settled the public policy question. Therefore, absent later authorization from the legislature, prosecutors may grant neither transactional nor use immunity. *Id.* at 769. Under such circumstances, a witness may quite properly ignore a promise of non-prosecution and assert his privilege against self-incrimination. *Id.* at 771.

The holding in *McKelvey,* on the one hand, and the right that Sgt. Brown now asserts, arose from different bodies of law. As the *McKelvey* court correctly observed, the legislature has denied the state the power to enforce its criminal law with the assistance of compelled testimony. The legislature has decided that the immunity that must necessarily accompany such testimony carries too great a cost. Therefore, under Missouri law, neither prosecutors nor judges may grant immunity.

On the other hand, the relief that Mr. Brown seeks arises from federal law, not Missouri law. Therefore, we must examine his claim in light of principles applied by the federal courts construing that law. *Cf. Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (reversing state court decision that interpreted federal law to provide greater relief than that law provides). *Garrity v. New Jersey, supra,* and *Gardner v. Broderick, supra,* established a principle that a public employer may not condition an employees' job security on his answering questions that subject him to possible incrimination. Later federal decisions have held, however, that once that risk of incrimination disappears, the employer may properly require answers to pertinent questions. Those decisions have construed the *Garrity* decision to provide a type of use immunity that arises as a matter of law. They hold that a warning as to the rights that *Garrity* and its progeny

provide will sufficiently protect the employee's right to be free from self-incrimination. Therefore, following such a warning the employer may compel the employee to reply.

The concept of *Garrity*-type automatic immunity arose in *Confederation of Police v. Conlisk*, 489 F.2d 891 (7th Cir.1973). There, the police department fired several police officers who had asserted their privilege against self-incrimination before the grand jury. Departmental rules provided for dismissal under such circumstances. The court found the regulation unconstitutional as applied against the officers and ordered the officers' reinstatement. The court rested its decision to reinstate the officers largely on the fact that neither the prosecutor nor the police authorities had advised the officers that anything they said could not be used against them in criminal proceedings. *Id.* at 895.

In so holding the court rejected the police department's argument that it had no power to grant immunity and, therefore, the warning would have no effect. The court responded:

> Such a power, however, is not necessary. In *Garrity* the Supreme Court indicated that the Fifth Amendment *itself* prohibited the use of statements or their fruits where the statements had been made under the threat of dismissal from public office. Therefore, by advising the officers that their statements, when given under threat of discharge, cannot be used against them in subsequent criminal proceedings, the [department] is not "granting" immunity from prosecution; it is merely advising the officers of the constitutional limitations on any criminal prosecution should they answer.

*Id.* at 895 n. 4 (emphasis in original).

In later cases that argument has worked against dismissed public employees. In *Erwin v. Price*, 778 F.2d 668 (11th Cir. 1985), a police officer faced accusations of off-duty misconduct. Some of his actions amounted to crimes under Georgia law. He refused to submit to departmental questioning even after the investigators had advised him that anything he said could not be used in a criminal prosecution. The court rejected his argument that he should receive an explicit grant of immunity from the district attorney before he could be compelled to provide any information. The court explained that use immunity automatically attaches as a matter of constitutional law when a public employer compels an employee, on pain of dismissal, to answer possibly incriminating questions about the employee's performance of his official duties. It noted that Georgia statutes did not provide for immunity under the circumstances of his case, but such immunity was unnecessary in light of the automatic immunity already available. *Id.* at 670; *see also Gulden v. McCorkle*, 680 F.2d 1070, 1074 (5th Cir.1982) (rejecting the argument that employees must receive an affirmative grant of immunity before their employer may fire them for refusing to answer questions); *McLean v. Rochford*, 404 F.Supp. 191, 198 (N.D.Ill.1975) (warnings that statements would not be used in any criminal prosecution sufficed to protect employee from self-incrimination).

■ The plaintiff contends, however, that the department's investigation exceeded the scope of "questions specifically, directly and narrowly relating to the performance of his official duties." *Gardner v. Broderick, supra,* 392 U.S. at 277, 88 S.Ct. at 1915. He points out that his alleged misconduct took place while he was off duty and outside of his jurisdiction. The NKCPD regulations, however, provide that a police officer remains within the call of duty at all times. Furthermore, its interest in discipline extends to any conduct unbecoming of a police officer. *Cf. Heidebur v. Parker*, 505 S.W.2d 440, 444 (Mo. App.1974) (upholding dismissal of a police officer who, while off duty, accompanied a friend to remove parts from an apparently abandoned automobile). In a similar case, the Eleventh Circuit upheld, against a constitutional challenge, a dismissal of a police officer who had refused to respond to allegations concerning his off-duty conduct. *Erwin v. Price, supra.*

■ Here, the victim alleged that Sgt. Brown had represented himself as a police officer who was pursuing a criminal investigation and that the officer had confronted

him with his handgun. The department had a sufficient interest in resolving those allegations to require Sgt. Brown to account for his conduct. The chief advised Sgt. Brown that nothing he said could be used against him in a criminal prosecution, and he sought no waiver of the plaintiff's right to prevent such use. Under those circumstances the NKCPD could properly require Sgt. Brown to cooperate in its investigation or face dismissal. His refusal provided adequate grounds for the city's action.

We note, however, the limited grounds upon which we base this decision. We hold only that a public employer, who has adequately advised a public employee that nothing he says and no evidence obtained from his statement may be used against him in a criminal prosecution, may properly dismiss that employee for refusing to respond to questions about that employee's performance of his public trust.

Accordingly, we affirm the trial court's judgment upholding the City of Kansas City's dismissal of Sgt. Brown.

All concur.