STATE of Missouri, ex rel. William L. WEBSTER, Attorney General, Respondent,

v.

Angela AMES, f/k/a Angela F. Hampton, d/b/a For Women Only Total Fitness Salon, Appellant.

No. 16410.

Missouri Court of Appeals, Southern District, Division One.

June 20, 1990.

Wayne Gifford, Waynesville, for appellant.

William L. Webster, Atty. Gen., Anne E. McIntosh, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

The State of Missouri ("plaintiff") acting through the Attorney General, brought this civil action against Angela Ames ("defendant") alleging that defendant had engaged in unlawful merchandising practices. During the pendency of the action plaintiff propounded interrogatories to defendant. Defendant refused to answer three of them, asserting "5th Amendment privileges."

The trial court overruled the objections and ordered defendant to answer the interrogatories by a specified deadline. Defendant refused. The trial court ultimately entered an order striking defendant's answer and granting plaintiff "Default on Liability."

Some four weeks later plaintiff appeared in the trial court and presented evidence. Defendant failed to appear.[1] The trial court thereupon entered judgment against defendant for $1,413.69 restitution, $141.36 for the State of Missouri Merchandising Practices Revolving Fund,[2] $12,000.00 in penalties, and $4,285.00 for costs of investigation and prosecution. The judgment also included injunctive relief.

Defendant appeals, presenting one point relied on; it reads:

"That the [trial] court erred in not sustaining the defendant's Fifth Amendment claim against self incrimination in that the plaintiff sought to require the defendant to provide information which could be used against her in a criminal proceeding. Thereafter the [trial] court committed further error in striking defendant's answer as the court was able only to strike the portion of her answer requesting affirmative relief and defendant was entitled to defend and use her right against self incrimination."

Before considering the merits of the point we must rule on two motions filed by plaintiff and taken with the case.

Plaintiff moved for dismissal of the appeal on the ground that defendant failed to file a motion in the trial court "to set aside or vacate the default judgment." Citing *Vonsmith v. Vonsmith,* 666 S.W.2d 424 (Mo. banc 1984), and *Barney v. Suggs,* 688 S.W.2d 356 (Mo. banc 1985), plaintiff maintains a default judgment cannot be appealed unless the trial court has previously heard a motion to set aside or vacate the judgment. Both cases undeniably support that proposition. *Vonsmith,* 666 S.W.2d at 424; *Barney,* 688 S.W.2d at 358[1].

However, neither *Vonsmith* nor *Barney* is factually identical to the instant case. In both *Vonsmith* and *Barney* the party who was sued filed no responsive pleading within the time allowed, and a judgment by default was entered in favor of the suing party. In the instant case defendant filed an answer which remained undisturbed until ordered stricken by the trial court 11 months later. Consequently, there was no default *nihil dicit.*[3]

---

1. The docket sheet indicates defendant's lawyer was sent timely notice of the hearing date.

2. Section 407.140, RSMo 1986, *infra.*

3. Default *nihil dicit* is default for failure to file a responsive pleading within the time allowed after service of summons. *O'Connor v. Quiktrip Corp.,* 671 S.W.2d 17 (Mo.App.1984); *Smith v. Sayles,* 637 S.W.2d 714 (Mo.App.1982). Such a

In *Hayes v. Hayes*, 677 S.W.2d 933 (Mo. App.1984)—ignored by plaintiff—the husband in an action for dissolution of marriage failed to appear for scheduled depositions. As a sanction for such failure the trial court struck the husband's answer. Rule 61.01.[4] Upon a subsequent hearing the trial court entered a decree dissolving the marriage. The husband appealed. This Court held that the husband's right to appeal was not controlled by *Vonsmith* in that the sanction imposed on the husband was not the rendering of a default judgment but the striking of his answer. 677 S.W.2d at 934–35. Relying on *In re Marriage of Dickey*, 553 S.W.2d 538, 539[1] (Mo.App.1977), this Court held in *Hayes* that the rendition of judgment which follows the disallowance of a pleading for failure to obey a discovery order does not come by default in the ordinary sense, but is treated as a judgment upon trial by the court. *Hayes*, 677 S.W.2d at 934.

In *Houchins v. Houchins*, 727 S.W.2d 181 (Mo.App.1987)—also ignored by plaintiff—the trial court in an action for dissolution of marriage struck the wife's answer as a sanction for failure to comply with discovery orders and conducted a trial of the case without the wife's participation. The wife appealed from the ensuing decree. The husband, citing *Vonsmith*, argued that the appellate court lacked jurisdiction to entertain the appeal because the wife filed no motion in the trial court to vacate or set aside the decree. *Houchins*, 727 S.W.2d at 183. The Western District of this Court in *Houchins* noted that *Vonsmith* presented a traditional default situation, that is, a party served with process who made no appearance at all and filed no responsive pleading. *Houchins* explained that the rationale for the rule denying the defaulting party the remedy of appeal, as stated in *Vonsmith*, rests on the proposition that no review of alleged trial court error should be permitted where the lower court has

been given no opportunity to take corrective action. *Houchins*, 727 S.W.2d at 183. In *Houchins*, the trial court entered the order striking the wife's pleadings after a hearing at which the wife appeared. The merits of the sanction were reviewed when the wife moved for reconsideration of the order. The trial court therefore had the opportunity to review its own action in imposing the sanction, thus a post-judgment motion would have added nothing of substance. Citing *Hayes*, the opinion in *Houchins* held that *Vonsmith* did not bar the wife's appeal. *Houchins*, 727 S.W.2d at 183.

In the instant case the trial court heard argument September 8, 1988, on a motion by plaintiff to compel defendant to answer the three interrogatories in question. The trial court took the matter under advisement pending receipt of written suggestions from plaintiff. On November 2, 1988, after receiving plaintiff's suggestions, the trial court entered an order commanding plaintiff to answer the interrogatories within 20 days. On November 14, 1988, defendant filed a motion praying the trial court to reconsider that order.

On December 7, 1988, plaintiff filed a motion asking the trial court to impose sanctions on defendant for failing to answer the interrogatories. On January 17, 1989, the trial court granted defendant an additional 20 days to answer the interrogatories, and provided that if defendant failed to do so sanctions would be imposed. On April 25, 1989, upon being informed by defendant's lawyer that defendant would not answer the interrogatories, the trial court ordered defendant's pleadings stricken and granted plaintiff "Default on Liability."

It is thus evident that the trial court on at least three occasions considered whether defendant should answer the interrogato-

---

default admits the traversable allegations of the petition as to the cause of action pled, in effect admitting injury to the plaintiff by the violation of a legally protected interest, but the default does not admit that damages resulted from that injury. *O'Connor*, 671 S.W.2d at 19[1]; *Smith*, 637 S.W.2d at 717.

4. Rule references are to Missouri Rules of Civil Procedure (1990). Rule 61, effective January 1, 1975, has remained unchanged since that date.

ries, hence a motion to set aside or vacate the judgment would have presented no issue which the trial court had not considered prior to judgment. Applying *Hayes,* 677 S.W.2d 933, and *Houchins,* 727 S.W.2d 181, we hold that defendant's right to appeal is not governed by *Vonsmith* and *Barney.* Plaintiff's motion for dismissal of the appeal is denied.

Plaintiff also moved to dismiss the appeal because (1) defendant allegedly failed to preserve her point relied on in compliance with Rule 84.04(d), (2) defendant's point relied on allegedly raises an issue not argued in the trial court, (3) defendant's brief allegedly fails to contain a fair and concise statement of facts as required by Rule 84.04(c), (4) defendant's brief allegedly fails to cite "legal authority" for certain contentions and allegedly fails to set forth in the statement of facts certain facts referred to in the argument, and (5) defendant allegedly used her brief to attack plaintiff's actions. We have considered plaintiff's contentions and have determined that they (a) supply no justification for dismissing the appeal, and (b) warrant no further discussion. We observe, however, that had plaintiff made as thorough an effort in the trial court to avoid leading it into error as plaintiff has made in this Court seeking dismissal of the appeal, the appeal would likely have never occurred. Plaintiff's motion to dismiss the appeal for the alleged infractions enumerated in this paragraph is denied.

Reaching the merits of the appeal, we note that plaintiff's petition alleges it was brought pursuant to § 407.100, RSMo 1986. That section reads:

"1. Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, he may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

. . . .

4. The court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss ... which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter. It shall be the duty of the attorney general to distribute such funds to those persons injured.

. . . .

6. The court may award to the state a civil penalty of not more than one thousand dollars per violation...."

Section 407.130, RSMo 1986, reads:

"In any action brought under the provisions of section 407.100, the attorney general is entitled to recover as costs, in addition to normal court costs, the costs of the investigation and prosecution of any action to enforce the provisions of this chapter."

Section 407.140, RSMo 1986, reads:

"1. There is created in the state treasury a special trust fund for the office of the attorney general, to be known as the 'Merchandising Practices Revolving Fund'....

. . . .

3. In any case in which the court awards damages as provided in section 407.100, there shall be added, in addition to restitution and costs, an amount equal to ten percent of the total restitution awarded, or such other amount as may be agreed upon by the parties or awarded by the court, which amount shall be paid into the state treasury to the credit of the merchandising practices revolving fund.

4. All moneys recovered as court costs or as costs provided by section 407.-130 ... shall be paid into the state treasury to the credit of the merchandising practices revolving fund.

. . . ."

Plaintiff's petition alleged, in substance, that defendant did business as "For Women Only Total Fitness Salon"; that defen-

dant offered for sale and sold annual memberships in the Salon through December, 1987; that on or about January 2, 1988, defendant ceased operating the Salon; and that this left the members with "useless memberships." The petition further alleged that from at least December, 1987, defendant, in advertising, offering for sale, and selling memberships, had either directly or through others used "deception, fraud, false pretense, false promise, misrepresentation, unfair practices and/or the concealment, suppression or omission of material facts" in violation of § 407.020, RSMo 1986, by (a) providing one-year memberships and accepting payment for them and failing to disclose that the Salon was unable to meet its financial obligations, and (b) providing one-year memberships and accepting payment for them, thereby misleading consumers into believing that the Salon was in good standing and would be capable of honoring memberships for the duration of the membership period.

Defendant filed an answer consisting essentially of a general denial.

Plaintiff subsequently propounded interrogatories to defendant. The interrogatories included the following three, which are the subject of this appeal:

"9. Identify all members of ... [the] Salon since January 1, 1987, and with respect to each member provide the date of membership and the price paid for each membership.

10. Identify each member of ... [the] Salon who purchased either an initial membership, a renewal membership, or an extension of their membership and, as a result of the closing of ... [the] Salon, have been unable to use said fitness center for the complete membership period.

11. With respect to each member of ... [the] Salon whose membership had not expired at the time the fitness salon closed its doors identified in your answer to Interrogatory Number 10, state the amount of time remaining on their membership and the amount of membership fees paid."

Defendant objected to each of the above interrogatories on the ground that each

"violates Defendant's 5th Amendment privileges." The fate of the objections has been chronicled earlier.

█ Our first task in considering defendant's point relied on is to determine which constitutional provision it invokes. As reported above, defendant's objection to the three interrogatories was that each "violates Defendant's 5th Amendment privileges." In her brief, however, defendant proclaims these objections were ones "which everyone understood and treated as being applicable under Article 1, Section 19, of the Missouri Constitution." Defendant then proceeds to construct her argument around the Missouri provision, citing *State ex rel. Shapiro Realty & Inv. Co. v. Cloyd*, 615 S.W.2d 41, 46 (Mo. banc 1981), which holds:

"[I]n order to assure that the protection given by Article I, § 19, of the Missouri Constitution, is meaningful, we hold that once a witness claims the privilege afforded him under that provision, a rebuttable presumption arises that the witness' answer might tend to incriminate him, a presumption that can be rebutted by a demonstration by the party seeking the answer that such answer ' " 'cannot possibly' " ' have such tendency to incriminate.' "

Plaintiff responds that in the trial court defendant "raised and preserved for appeal only the privilege granted by the Fifth Amendment [to the Constitution of the United States]." Plaintiff reminds us that to preserve a constitutional question for appellate review a party must, among other things, raise the question at the earliest opportunity consistent with good pleading and orderly procedure, and must specify the sections of the constitution claimed to have been violated. *State v. Brookshire*, 325 S.W.2d 497, 500 (Mo.1959); *Ingle v. City of Fulton*, 260 S.W.2d 666, 667[1] (Mo.1953); *State ex rel. Kirks v. Allen*, 250 S.W.2d 348, 350 (Mo.1952); *State v. Garrette*, 699 S.W.2d 468, 480[2] (Mo.App. 1985).

In the instant case we find nothing in the record demonstrating that defendant ever cited Art. I, § 19, of the Constitution of

Missouri to the trial court as justification for her refusal to answer interrogatories 9 through 11. We therefore agree with plaintiff that this appeal involves only defendant's right against self-incrimination protected by the Fifth Amendment to the Constitution of the United States. However, as we shall see, that makes no difference in the outcome.

In *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 767–68 (Mo. banc 1987), we are told:

"The privilege against self-incrimination is secured by the Fifth Amendment to the United States Constitution and by Article I, section 19 of the Missouri Constitution. The principles to be followed in applying these two provisions are consistent.

A witness' privilege against self-incrimination 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' The privilege extends not only to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in the chain of evidence needed to convict the witness. Once a witness invokes his constitutional privilege against self-incrimination, a rebuttable presumption arises that his answer might tend to incriminate him. This presumption can be rebutted by a demonstration by the questioner that the answer cannot possibly have a tendency to incriminate the witness. Only after the questioner makes such a demonstration may a court compel an answer to the question in derogation of the privilege against self-incrimination[.]" (Citations omitted.)

In the instant case the only effort by plaintiff (the questioner) to make the showing required by *Munn* in the trial court—so far as we can determine from the record—appears in the suggestions filed by plaintiff after the September 8, 1988, argument on plaintiff's motion to compel defendant to answer the interrogatories. Relevant excerpts from those suggestions are:

"The identity of the members of the health facility, the term of membership, and the price each member paid is relevant to the subject matter of the Plaintiff's cause of action. This information goes to the crux of the allegations that Defendant violated the Merchandising Practices Act (Section 407.020) alleged by Plaintiff. The identity of members is particularly relevant to the subject matter because these individuals have knowledge of the relevant facts pertaining to the purchase of their memberships.

. . . .

This [Fifth Amendment] privilege protects against compulsory production of an individual's personal papers as well as oral testimony. However, it is well established that an individual may not assert the Fifth Amendment privilege on behalf of a corporation, partnership, or other collective entity. . . .

In the instant case the interrogatories do not request Defendant to produce documents. On the contrary, the scope of interrogatories only request the names of members, the date of each member's membership and the price paid for the memberships. This information does not rise to the level of compelled testimony but rather only requests the names of individuals who may have information relevant to the subject matter of this cause of action. It is clear that the Fifth Amendment does not independently prohibit the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating. *Fisher v. United States,* 96 S.Ct. 1569, 425 U.S. 391, 48 L.Ed.2d 39 (1976).

The disclosure by Defendant of the information requested would not disclose facts constituting a link in a chain of evidence sufficient to convict Defendant of a criminal offense. Information regarding the Defendant's intent to close

the facility or the statements made to each member is not requested."

The final paragraph of the suggestions quoted above indicates plaintiff believed the *Munn* test applied to defendant's Fifth Amendment right against self-incrimination, as the suggestions assert that the answers to interrogatories 9 through 11 would not disclose facts constituting "a link in a chain of evidence sufficient to convict Defendant of a criminal offense." That is virtually identical to the language in *Munn.*

In plaintiff's brief in this Court, plaintiff asserts the trial court did not err in ordering defendant to answer the interrogatories "because such interrogatories requested information from [defendant's] business records over which [she] is not entitled to claim any privilege against self-incrimination under the Fifth Amendment of the United States Constitution in that the ... Salon was, at the time such records were prepared, a partnership." This contention, as we comprehend it, is that the information plaintiff would have supplied had she answered interrogatories 9 through 11 also appears in partnership "business records," hence defendant had no Fifth Amendment right to refuse to answer the interrogatories. Plaintiff correctly points out that a former partner possesses no Fifth Amendment privilege as to the partnership's financial records in his possession in a representative capacity, even though they might incriminate him personally. *Bellis v. United States,* 417 U.S. 85, 101, 94 S.Ct. 2179, 2189, 40 L.Ed.2d 678, 691 (1974).

In the instant case, however, interrogatories 9 through 11 did not ask defendant to produce any records—partnership or otherwise. Indeed, in plaintiff's suggestions in the trial court—quoted in part earlier—plaintiff flatly asserts the interrogatories "do not request Defendant to produce documents." The interrogatories ask defendant herself to identify all members of the Salon since January 1, 1987, to state the date of each membership, and to state the price paid for each membership. The interrogatories further ask defendant herself to identify each member of the Salon who has been unable to use it for the complete membership period and to state the amount of time remaining on each such membership, together with the amount of membership fees paid. Plaintiff cites no authority for the proposition that simply because such information might be found in the Salon's business records (assuming it was a partnership and not solely owned by defendant), defendant has no Fifth Amendment right to refuse to answer interrogatories asking her to disclose such information herself.

Plaintiff's petition, as noted earlier, pleads that the conduct in which defendant allegedly engaged violated § 407.020, RSMo 1986. Paragraph 3 of § 407.020 provides that any person "who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class D felony." Plaintiff's suggestions in the trial court, quoted in part earlier, state that the information sought by the interrogatories "goes to the crux of the allegations that Defendant violated the Merchandising Practices Act (Section 407.020)."

The names of the members of the Salon, the dates of their respective memberships, the prices paid for such memberships, the names of the persons who were unable to use the Salon for the complete membership period, the names of the members whose memberships had not expired at the time the Salon closed, the amount of time remaining on such memberships, and the amount of the membership fees paid would unquestionably furnish a link in the chain of evidence needed to prove that defendant violated § 407.020. As we have seen, a violation of § 407.020 is, by virtue of paragraph 3 of that section, a class D felony if the violator willfully and knowingly engages in such violation.

*Munn,* 733 S.W.2d 765, is a holding by the Supreme Court of Missouri that the test articulated there is the test to be applied when one asserts his right against self-incrimination guaranteed by the Fifth Amendment to the Constitution of the United States as a basis for refusing to answer

questions in a court proceeding. While plaintiff's brief appears to contend that some other test (inferentially less favorable to defendant) applies, *Munn* is binding on us. Mo. Const. Art. V, § 2; *Gunter v. State*, 754 S.W.2d 594, 596[3] (Mo.App. 1988); *State v. Jones*, 703 S.W.2d 41, 42[1] (Mo.App.1985). Consequently, once defendant asserted her right against self-incrimination guaranteed by the Fifth Amendment to the Constitution of the United States as a ground for refusing to answer interrogatories 9 through 11, plaintiff was required to demonstrate to the trial court that plaintiff's answers would not furnish a link in the chain of evidence needed to convict defendant of a class D felony under § 407.020.3 and that such answers could not possibly have a tendency to incriminate defendant. We hold that plaintiff failed to make such a showing. Indeed, as observed above, plaintiff told the trial court that the information sought "goes to the crux of the allegations" that defendant violated § 407.020.

*Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), cited in plaintiff's suggestions in the trial court and in plaintiff's brief here, is not in point. That case presented the question whether a summons directing an attorney to produce documents delivered to him by his client in connection with the attorney-client relationship is enforceable over a claim that the documents were constitutionally immune from summons in the hands of the client and retained such immunity in the hands of the attorney. 425 U.S. at 393, 96 S.Ct. at 1572. The instant case, as emphasized earlier, does not involve production of documents.

■ It follows from what we have said that the trial court erred in overruling defendant's objections to interrogatories 9 through 11 and ordering defendant to answer them. We must therefore determine whether that ruling, followed by the sanction of striking defendant's answer and granting plaintiff "Default on Liability," requires reversal of the judgment.

That question is answered by *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559 (Mo.

banc 1974), a civil case in which the trial court indicated it would strike the answer of the sued party because said party refused to answer questions at a deposition on the ground his answers might incriminate him. *Id.* at 560. The opinion in *Pulliam* noted that *Franklin v. Franklin*, 365 Mo. 442, 283 S.W.2d 483 (banc 1955), upheld the striking of a wife's pleadings in a divorce case when she refused to answer interrogatories because of self-incrimination. *Pulliam* pointed out, however, that *Franklin* hinged on the fact that the person invoking the privilege was seeking affirmative relief in the trial court. *Pulliam*, 514 S.W.2d at 560–61. *Pulliam* explained:

"It is not unfair to preclude one who invokes the assistance of the courts from recovery when he refuses to produce evidence peculiarly within his knowledge pertinent to his right to recover. It is something else again to require one who is in court involuntarily to elect between his constitutional privilege and the automatic entry of a judgment against him. Plaintiff has the burden of establishing her right of recovery and to shift or eliminate that burden because defendant asserts his constitutional privilege is to penalize defendant for invoking his rights. A court lacks the power and jurisdiction to require defendant to make such an election.

Relator has sought no affirmative relief; he is in court involuntarily. He raised his constitutional privilege immediately; his assertion of the privilege was in good faith; he has not been contumacious. The court will exceed its jurisdiction if it enters its order striking defendant's answer on the basis of defendant's assertion of his constitutional privilege.

We are not unmindful that in some situations the ruling we here make will present hardships to other litigants. It is regrettable, but necessary, if constitutional rights are to have meaning. What we have said here, however, does not mean that litigants may pick and choose that which they will allow to be discovered. Once the privilege has been invoked to preclude discovery, trial courts have the power not to allow the defendant to

change his position and testify at trial to his benefit. Invocation of the privilege at the discovery stage may well serve to preclude a defendant from controverting through his own testimony or records the evidence of the plaintiff at trial." *Id.* at 561.

*Accord: State ex rel. Lieberman v. Goldman,* 781 S.W.2d 802, 806–07 (Mo.App. 1989), holding that a trial court may not, in a civil action, strike a party's answer asserting an affirmative defense as a sanction for such party's reliance on the right against self-incrimination as a basis for refusal to disclose information sought by discovery.

In the instant case defendant's answer prayed that plaintiff's petition be dismissed with prejudice at plaintiff's cost. That prayer sought no affirmative relief. Defendant's answer did, however, pray "for such other and further relief as the Court deems just and proper." To the extent that this segment of defendant's answer sought affirmative relief, the trial court would have been justified in striking it—but nothing else—from defendant's answer.

It is obvious from *Pulliam* and *Lieberman* that the trial court in the instant case committed reversible error in striking defendant's answer and granting plaintiff "Default on Liability" as a sanction for defendant's refusal to answer interrogatories 9 through 11.

The judgment is reversed and the cause is remanded. The trial court is directed to vacate its order striking defendant's answer and granting plaintiff "Default on Liability." When that is done the cause shall be at issue and may proceed accordingly. Plaintiff may, of course, seek the sanctions authorized by *Pulliam.*

PREWITT and PARRISH, JJ., concur.