**STATE of Missouri, Respondent,**

v.

**Vernon G. CHRISTIAN, Appellant.**

**No. SD 31147.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 24, 2012.

Matthew Ward, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR.,
Presiding Judge.

Vernon G. Christian ("Christian") appeals his conviction for forgery in violation of section 570.090.[1] Christian claims the trial court erred in allowing the State to read deposition testimony to the jury. Finding no merit to Christian's claim, we affirm the trial court's judgment.

## Factual and Procedural History

On November 22 and 23, 2010, Christian was tried by a jury. The following evidence, viewed in the light most favorable to the verdict, was adduced at trial.

In February 2004, James King ("King") purchased the property at 4688 Gunnison Road ("the property"). King purchased the property through a realtor "who contacted the people who were representing the trust company, ... Lincoln Trust Company." On February 12, 2004, the deed to the property was filed in the Taney County Recorder's Office. Thereafter, King began making mortgage payments and paying property taxes on the land and cabin.

In November 2007, King realized he had not received a property tax bill. King called the Taney County Collector's Office and was informed that he no longer owned the property. King learned that a deed[2] had been filed on November 22, 2006, showing he had sold the property to Christian and a Mike Olson ("Olson"). The document contained a signature purporting to be King's and was notarized by Edmund E. Barker ("Barker"). King, however, testified that he had never seen the document before it was shown to him at the collector's office, that he had not signed the

---

1. All statutory references are to RSMo Cum. Supp.2002 unless otherwise indicated, and all rule references are to Missouri Court Rules (2011).

2. The word "deed" and "document" are used interchangeably by the parties in referring to the document recorded on November 22, 2006, purportedly transferring title from King to Christian and Olson.

document on November 22, 2006, that he had never met Barker, and that he never had Barker notarize his signature. King also testified he had never met Christian or Olson before learning about the deed, and he denied ever having an agreement with them to sell or rent the property. King said that no one had paid him money for the property, no one had relieved him of his mortgage obligation, and no one else had paid taxes on the property since he acquired it in 2004. King eventually regained title to the property through a civil action.

Robert Dixon, the Taney County Recorder of Deeds, testified that Christian came to his office on November 26, 2006, and presented a document to be recorded. Dixon told Christian that his document was not recordable because the notarization seal was incomplete. Christian returned to the office the next morning and submitted the document with a complete notary seal next to the partial seal. Dixon identified the document that his office recorded for Christian as the document that had purportedly been signed by King.

On the first day of trial, defense counsel objected to the State being allowed to use Barker's deposition testimony at trial. The State had filed a pre-trial motion to preserve the testimony of Barker, and that motion had been granted following a hearing on September 28, 2009. Defense counsel argued that the State had to make a showing that Barker was unavailable to testify at trial, and that the State had failed to show that Barker was deceased or otherwise incapacitated to such an extent that he could not come to court and testify live. The prosecutor entered into evidence a letter [3] dated September 1, 2009, that he received from Barker's family indicating Barker was not able to come to court due to his age and infirmity. The prosecutor noted that Barker's deposition had to be taken at his home. The prosecutor further pointed out that Barker was 90 years old by the time of trial and he believed that Barker continued to be unable to come to court. Defense counsel argued that a letter from 2009 was insufficient to show that the witness was presently unavailable, and he objected to the reading of the deposition transcript into the record.

The trial court stated that it would allow the deposition to be read to the jury in light of the information contained in the letter:

THE COURT: Apparently he's 89 years old and homebound, in a wheelchair, and currently receiving home health care, and this is over a year ago. So he would be 90 years old now, and I don't think that the circumstances have changed any, unless either one of you know something different. Do either one of you know anything different?

[DEFENSE COUNSEL]: I would say it's the State's burden to—

THE COURT: Do you know of anything different?

[THE PROSECUTOR]: I do not.

THE COURT: Well, the State's presented something here that at 89 he's homebound and receiving home health care and can't come out.

And also, the State's also provided to the Court a statement—and I'm assuming you were at the deposition.

[DEFENSE COUNSEL]: I was, Your Honor.

---

**3.** This letter was not deposited with this Court. "When an exhibit is not filed with an appellate court, its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant."

*State v. Davis*, 242 S.W.3d 446, 449 n. 1 (Mo.App. S.D.2007). Additionally, we note that Christian's Statement of Facts references numerous other exhibits that were also not deposited with this Court.

THE COURT: So then you went to the home of Mr. Barker over a year ago?

[DEFENSE COUNSEL]: I did.

THE COURT: And the State went to the home, so—

[THE PROSECUTOR]: And Mr. Christian was there. Just while we're on the record, I'll mention that. It comes out in the deposition.

THE COURT: And Mr. Christian was there also?

[THE PROSECUTOR]: Correct.

THE COURT: So everyone was there and he was 89 years old. I can't see where the circumstances would change in a 90–year–old. So the Court will allow it to be read into the record.

Barker's deposition was read to the jury. Barker testified in his deposition that Christian came to his home on November 22, 2006, and asked him to notarize a document. Barker testified that he notarized the document even though it had already been signed. Barker testified he lost his notary license as a result.

A statement and signature by King were submitted to handwriting expert Don Lock ("Lock"), along with Christian's signature on a statement that he wrote for the sheriff's office, and the signature on the deed that purported to be King's. Lock testified that the signature on the deed purporting to be King's was "nongenuine"; i.e., it had not been made by King. Lock also compared Christian's known signature to the signature on the deed purporting to be King's, and he testified that "[e]verything points towards [ ] Christian as the writer of the nongenuine signature with no unexplainable differences[ ] [and] . . . nothing points away from him as a possible writer."

Christian testified that he purchased the Gunnison Road property in 1987. Christian said that he confronted King after finding out that the property had been put into King's name for tax purposes, and that King said he would sue the real estate agent from whom he bought the property and would sign the land back to Christian. Christian said that about two weeks later, King brought him the deed, which he had already signed. Christian said that he took the deed to the recorder's office and was told that it had been notarized in the wrong place. Christian explained he went to Barker, whom he had known for years, and had him "renotarize" the deed. Christian took the deed back to the recorder's office and had it recorded.

The jury found Christian guilty of forgery. Christian waived jury sentencing prior to trial, and the trial court sentenced him to six years' imprisonment. This appeal followed.

Christian's sole point relied on contends the trial court erred in allowing the State to read Barker's deposition to the jury because it violated Rule 25.16 and Christian's constitutional rights to confront a witness against him and due process in that there was no showing Barker was unavailable or that the State made any attempt to procure Barker's attendance at trial. The primary issue pertinent to our resolution of this matter is whether the trial court abused its discretion in determining Barker was unavailable due to sickness or infirmity.

### Standard of Review

"A trial court's determination that a witness is 'unavailable' is reviewed for an abuse of discretion." *State v. McGee*, 284 S.W.3d 690, 707 (Mo.App. E.D.2009). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Artis*, 215 S.W.3d 327, 334 (Mo.App. S.D.2007).

However, "[w]hether a defendant's constitutional rights were violated is a question of law reviewed *de novo.*" *State v. Nunnery,* 129 S.W.3d 13, 17 (Mo.App. S.D. 2004).

## Analysis

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him...." U.S. Const. amend. VI; *see State v. Bryan,* 60 S.W.3d 713, 718 (Mo.App. S.D.2001). Similarly, the Missouri Constitution provides that "in criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face...."[4] MO Const. art. I, § 18(a). "Therefore, a criminal defendant is constitutionally guaranteed the right under the Sixth Amendment to confront the witnesses against him or her and to have the opportunity for effective cross[-]examination of any witnesses who appear and testify against him or her." *Artis,* 215 S.W.3d at 334 (internal quotation and citation omitted).

■ "An exception to the right to confront witnesses is permitted if the State demonstrates a witness is unavailable, has testified previously, and was subject to cross-examination." *State v. Woods,* 336 S.W.3d 473, 475 (Mo.App. E.D.2011); Rule 25.16(a). Rule 25.16(b) provides that a witness may be "unavailable" if the witness:

(1) Is dead,

(2) Is unable to attend or testify because of sickness or infirmity,

(3) Has invoked a testimonial privilege or other refusal to testify not produced by the action of the state, or

(4) Is otherwise unavailable and the state has made a good faith effort to obtain the presence of the witness at the hearing or trial, but has been unable to procure the attendance of the witness.

■ Christian specifically contends the State failed to prove Barker was unavailable in that State's reliance on Barker's condition from over a year prior does not constitute "a good faith effort to obtain the presence of Barker at trial." Christian, however, is misguided in claiming the State was required to establish a good-faith effort to obtain the presence of Barker at trial. Christian cites to Rule 25.16(b)(4), which deals with "otherwise unavailable" witnesses. The applicable subsection here is Rule 25.16(b)(2), which states the witness is unavailable if the witness is "unable to attend or testify because of sickness or infirmity." This subsection, in contrast to Rule 25.16.(b)(4) regarding an "otherwise unavailable" witness, does not require "a good[-]faith effort to obtain the presence of the witness at trial."[5] *Compare* Rule 25.16(b)(2) *and* Rule 25.16(b)(4). "A witness may be 'unavailable' if he or she is unable to testify at trial due to sickness or infirmity." *McGee,* 284 S.W.3d at 707.

■ Here, the State filed a motion to preserve Barker's testimony, there was a hearing on the matter, and the motion was sustained. A letter dated September 1, 2009, from Barker's family indicated Bark-

---

**4.** The Sixth Amendment applies to criminal proceedings in state courts through application of the Fourteenth Amendment which prohibits the deprivation of life or liberty without "due process of law." *State v. Glaese,* 956 S.W.2d 926, 930 (Mo.App. S.D.1997).

**5.** Similarly, Christian erroneously cites to *Woods,* 336 S.W.3d at 475, for the proposition

that the State must establish a good-faith effort to obtain the presence of the witness. *Woods,* however, is inapposite to this case because it involved a witness who was "otherwise unavailable" because he had left Missouri—not a witness who was unavailable due to infirmity. *Id.*

er was not able to come to court due to his age and infirmity. Barker's deposition was taken in October 2009 at his home. The trial court based its decision to permit the deposition to be read to the jury in light of the information contained in the letter. The trial court noted that the letter established Barker was 89 years old, homebound, in a wheelchair, and receiving home health care over a year ago. The trial court reasoned that it could not "see where the circumstances would change in a 90–year old." Thus, Barker was "unavailable" because he was unable to testify at trial due to sickness or infirmity. *See McGee*, 284 S.W.3d at 707. We do not find this ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Point denied. We affirm the trial court's judgment.

BARNEY and BATES, JJ., concur.