

# Missouri Court of Appeals

### Southern District

### Division Two

VERNON GEORGE CHRISTIAN, )
                                  )
    Movant-Appellant, )
                                  )
v. )      No. SD33998
                                  )
STATE OF MISSOURI, )      **Filed: Sept. 2, 2016**
                                  )
    Respondent-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Tony W. Williams

**REVERSED AND REMANDED FOR NEW TRIAL**

    A jury found Vernon George Christian ("Movant") guilty of the class C felony of

forgery. *See* section 570.090.[1] The trial court imposed a six-year sentence, and this court

affirmed Movant's conviction and sentence on direct appeal in *State v. Christian*, 364 S.W.3d

---

[1] Under section 570.090.1:

> A person commits the crime of forgery if, with the purpose to defraud, the person:
>
> (1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority[.]

RSMo Cum. Supp. 2013. All rule references are to Missouri Court Rules (2016).

1

797 (Mo. App. S.D. 2012). Movant now appeals the denial of his amended Rule 29.15 motion after an evidentiary hearing.[2]

In two points, Movant claims the motion court clearly erred in denying relief because his trial counsel was ineffective in: (1) failing to object when the prosecutor introduced evidence that Movant had invoked his Fifth Amendment right to remain silent in a deposition he gave in a related civil suit; and (2) failing to object to other (unspecified) "evidence" of that civil suit. Finding merit in Movant's first point, we reverse the denial of post-conviction relief and remand the matter for a new trial.[3]

**Standard of Review and Governing Law**

We presume the findings of the motion court correct, **Worthington v. State**, 166 S.W.3d 566, 572 (Mo. banc 2005), and we will reverse only if they are clearly erroneous. Rule 29.15(k); **Johnson v. State**, 333 S.W.3d 459, 463 (Mo. banc 2011). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." **Price v. State**, 422 S.W.3d 292, 294 (Mo. banc 2014).

> To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test in order to prove his or her claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a movant must demonstrate that: (1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure. *Id*. at 687, 104 S.Ct. 2052.

---

[2] On June 6, 2012, Movant, proceeding *pro se*, timely filed a motion requesting post-conviction relief pursuant to Rule 29.15. The motion court appointed counsel on June 12, 2012. On July 2, 2012, motion counsel entered an appearance and requested an additional thirty days in which to file an amended motion. In an order dated August 6, 2012, but not filed until September 6, 2012, the motion court granted Movant an additional thirty days to file any amended motion. Motion counsel timely filed the amended motion for post-conviction relief on September 10, 2012.

[3] Our resolution of Point 1 in Movant's favor makes it unnecessary for us to decide his second point. *See* **Wolfe v. State**, 96 S.W.3d 90, 95 n.5 (Mo. banc 2003).

2

. . . .

> To establish the prejudice requirement of *Strickland*, a movant must prove prejudice. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).[4]

*Johnson v. State*, 388 S.W.3d 159, 163 (Mo. banc 2012).

"To justify relief on a post-conviction motion, the failure to object 'must have been of such character as to deprive the defendant substantially of his right to a fair trial.'" ***Ervin v. State***, 80 S.W.3d 817, 822 (Mo. banc 2002) (quoting ***State v. Bearden***, 926 S.W.2d 483, 486 (Mo. App. S.D. 1996)). "The movant must prove that a failure to object was not strategic and that the failure to object was prejudicial. Counsel will not be deemed ineffective for failing to make nonmeritorious objections." ***State v. Clay***, 975 S.W.2d 121, 135 (Mo. banc 1998) (citation omitted).

### Evidentiary and Procedural Background

Based on the applicable standard of review, our summary of the relevant facts supporting Movant's conviction on direct appeal included only evidence favorable to the jury's verdict. To place Movant's ineffective assistance claim in context, we here include some additional evidence and procedural background.[5]

James King ("King") provided the following testimony at the November 2010 trial. King had purchased the property at 4688 Gunnison Road ("the property") through a realtor, King's deed to the property was filed in the Taney County Recorder's Office, and King began making

---

[4] ***Strickland*** defines "a reasonable probability" as "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

[5] We incorporate portions of our prior opinion without further attribution.

3

mortgage payments and paying property taxes on the property (which consisted of land and a cabin).

In November 2007, King realized that he had not received a property tax bill. He called the Taney County Collector's Office and was told that he had not received one because he no longer owned the property. King learned that a deed purportedly signed by him on November 22, 2006 had transferred the property to Movant and Mike Olson ("Olson"). The signature on the deed purporting to be King's was notarized by Edmund E. Barker ("Barker").

King testified that he did not sign the deed and had never seen it before it was shown to him at the collector's office. King said that he had never met Barker and had never had Barker notarize his signature. King also testified that he had never met either Movant or Olson before learning about the deed, and he denied ever having an agreement with them to sell or rent the property. King said that no one had paid him money for the property, no one had relieved him of his mortgage obligation, and no one else had paid any taxes on the property since King had acquired it in 2004.

A handwriting expert, Don Lock ("Lock"), had been provided with the following materials for his examination: a statement and signature penned by King; Movant's signature on a statement he wrote for the sheriff's office; and the signature purported to be King's on the deed. Lock testified that the signature on the deed purporting to be King's was "nongenuine"; i.e., it had not been made by King. Lock also compared Movant's known signature to the signature on the deed purporting to be King's, and he testified that "[e]verything points toward [Movant] as the writer of the nongenuine signature with no unexplainable differences . . . . and nothing points away from him as a possible writer."

During the State's case-in-chief, the prosecutor asked King, "Have you got the title back to [the property]?" When King replied that he had, the prosecutor asked, "How did you go about doing that?" King answered, "Through a civil bench trial. I had to hire an attorney . . . and finally a declaration was made . . . in September . . . 2008, transferring the documents back into my name."

Also during the State's case-in-chief, the prosecutor read to the jury a portion of a deposition Movant had given in the civil suit about Movant's ownership of the property, and the "the pending criminal case" was referenced in the portion read to the jury. The portion the prosecutor read to the jury also included the following references to Movant's exercise of his right to refuse to answer questions based on the Fifth Amendment:

Q. Okay. How much did you pay for [the property]? Are you going to assert your Fifth Amendment right, sir?

A. Yes.

. . . .

Q. Okay. And how much -- did you tell me how much you paid for it?

A. No, I didn't.

Q. Do you remember or know?

A. I wasn't going to tell you.

Q. Okay. How much did you pay for it?

A. I'm going to stand on the Fifth Amendment. That's my business.

. . . .

Q. Okay. Now, then, when -- what were the circumstances that Mr. King would bring you this deed?

A. I'll stand on that.

5

Q.      On your Fifth Amendment rights?

A.      Yeah.

Q.      So you're refusing to answer any questions about the circumstances of this deed being brought to you based on your Fifth Amendment rights?

A.      Yes, sir.

Q.      Okay. If I were to ask you any questions concerning the petition that was filed, would you also assert your Fifth Amendment rights and not answer those questions?

A.      Probably so.

Q.      Well, I mean visit with your attorney.

A.      Ask, and I'll tell you yes or no.

Q.      If I were to ask you any questions concerning the petition that was filed, the deed, the transaction where you claim Mr. King sold or conveyed this property to you, would you assert your Fifth Amendment rights?

A.      Yes.

        . . . .

Q.      Let me ask this question. When Mr. King brought this deed to you, did any money change hands? You may want to visit with your attorney.

A.      I'll stand on the Fifth on that.

        . . . .

Q.      And when Mr. King brought you Exhibit 1 in 2006, did you pay him any money?

A.      I'm going to stand on the Fifth on that.

        . . . .

Q.      Okay. Okay. I'm about done, sir. I just want to reiterate that if I were to ask you about the allegations of the petition or the transactions that you -- whereby you claim ownership of the property or claim Mr. King gave you the deed that's Exhibit 1, you would assert your Fifth Amendment rights and not answer those questions; is that correct?

6

A.     Yes, sir.[6]

Trial counsel did not object to the prosecutor's reading to the jury any of these portions of Movant's deposition.

The next day, outside the hearing of the jury, trial counsel requested a mistrial on the ground that the prosecutor's reading of the invocations before the jury merited a mistrial. Trial counsel informed the trial court that he "didn't believe the prosecution was going to read" the invocations. Trial counsel commented that after this evidence came out, he thought it best to approach the issue outside the hearing of the jury later so as to not reinforce "the jury's remembrance." Trial counsel added, "I may have been wrong in that, Judge, and frankly I may have been ineffective in that." The prosecutor informed the trial court that "[trial counsel] had a copy of this transcript, in fact, sat in on the deposition that was read to the jury yesterday[.]" The prosecutor also informed the trial court that one of the parts of the deposition that was not read to the jury had been omitted at trial counsel's request "because after that [portion read] there was some commentary between the attorneys, including [trial counsel.]" In arguing against a mistrial, the prosecutor informed the trial court that the invocations would "not be referenced by the State in any comments."

> The trial court denied trial counsel's request for a mistrial, stating in part:
>
> [I]n looking at any of that evidence that's been presented, I don't see where there's really any connection between the two, of whether or not the question, when he was maintaining his rights, was even on the issue of guilt or innocence on this, on the same issue.
>
> In other words, the questions that were asked were not necessarily questions that were read in the record that have anything to do with guilt and innocence, but was something else.[7]

---

[6] We will refer collectively to these nine invocations by Movant of his Fifth Amendment rights as "the invocations."
[7] Movant included the trial court's refusal to grant a mistrial in his motion for new trial.

7

When the jury returned to the courtroom, no verbal instruction was provided regarding the invocations, and we have found no other verbal admonishment related to this evidence. The trial court's written instructions to the jury also did not address the invocations.[8]

Movant testified in his own defense, and the testimony he provided was as follows. Movant bought the property in 1987 at a tax sale for $1,900. After Movant moved off the property, King lived on it and replaced the roof on the house. When Movant learned that King was claiming to have purchased the property, Movant went to talk to King about it. According to Movant, King said that he was going to sue the real estate company that sold him the property, and King would deed the property back to Movant. About two weeks later, King brought Movant the signed and notarized deed, and Movant attempted to have it recorded. The Recorder refused to record the deed because "it had been notarized in the wrong place." Movant had known Barker "a long time and so [Movant] just took it back over there and told him that he'd already notarized it . . . [and] he renotarized it." Movant specifically denied that he had "sign[ed] James King's name" to the deed, and Movant stated that he had "no idea who did." Movant acknowledged that there had been a civil case involving Mr. King's claim for title to the property and that Movant had filed an answer in that case.[9]

At the evidentiary hearing on Movant's amended motion,[10] trial counsel testified that he was "aware that the State intended to utilize that deposition in their case in chief[,]" but he "had not anticipated that the State was going to utilize" the invocations at trial. When asked why he "did not object contemporaneously with the admission of" the invocations, trial counsel replied:

---

[8] The jury had been instructed at the beginning of the trial that they "must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the Court[,]" and they were also instructed before closing argument that the attorneys' arguments "are not evidence."

[9] The prosecutor described the case to the trial court by its case number and the style, "James King vs. Vernon Christian[.]"

[10] The judge who presided at Movant's criminal trial and imposed Movant's sentence also presided at the evidentiary hearing on the amended motion.

There are certain things that you simply believe that a prosecuting attorney acting in good faith would understand are so far out of bounds as to not use, and you get shocked and surprised at trial when they're brought up. And so I should have objected, but was quite surprised that they were being used.

Trial counsel testified that he did not know why he did not immediately request relief when the State finished reading from the deposition, but he recalled that later that evening, he "regained a little bit of composure" and followed up the next day with the request for a mistrial.

In its findings and conclusions, the motion court stated that Movant "must allege and prove that, but for the errors, a different result would have been obtained." The motion court also found:

[I]n regards to [trial counsel's] failure to object to the admission of a deposition containing his client's invocation of his right to remain silent and discussion of Movant's prior bad acts [and found that] the Movant did ask for a mistrial once that was seen by the jury and did so outside of the hearing of the jury, making a clear record of his objection to this material.

The motion court did not make any findings concerning trial counsel's purpose in or consequences from his failure to object to the invocations. The motion court denied Movant's amended motion, finding that "Movant did not meet his burden for showing ineffective assistance of counsel[.]" This appeal timely followed.

**Analysis**

*Point 1 – State's Use of the Invocations*

Movant claims the motion court "clearly erred in overruling [Movant's] motion for postconviction relief" because trial counsel was ineffective in "fail[ing] to object to the prosecutor's reading [Movant's] civil trial deposition to the jury, which contained several references to [Movant's] invocation of his Fifth Amendment right to remain silent."

The resolution of this claim appears to present a matter of first impression. In asserting that trial counsel's performance was deficient, Movant argues that trial counsel's failure to object

9

cannot be attributed to reasonable trial strategy because "reasonably competent trial counsel would have objected." Movant does not support this claim with a citation to any Missouri authority holding that the failure to object to a prosecutor's use at trial of a defendant's invocation of the Fifth Amendment in a related civil proceeding constitutes ineffective assistance. Instead, Movant draws upon basic principles articulated in case law that prohibit a prosecutor from using a defendant's post-arrest invocation of the Fifth Amendment as proof of guilt in a criminal trial to argue that trial counsel's failure to object to the invocations fell below the standard of a reasonably competent lawyer.

Movant also argues that if a prosecutor elicits evidence that the defendant invoked the Fifth Amendment, regardless of whether the invocation occurred in the course of a prior proceeding or during the criminal trial itself, then the defendant's guarantee against compelled testimony has been violated, citing *U.S. v. Carriles*, 832 F.Supp.2d 699, 702-03 (W.D. Tex. 2010) (a prosecutor's comment or suggested "inference drawn from an invocation of the right to remain silent would itself be a form of compulsion to testify" without regard to whether the right was invoked "in prior proceedings" or "during a criminal trial"). *See also Griffin v. California*, 380 U.S. 609, 614 (1965) (a "comment on the refusal to testify is a remnant of the inquisitorial system of criminal justice which the Fifth Amendment outlaws") (internal quotation and citations omitted).

The State responds that "[n]o Missouri case appears to have squarely addressed whether an invocation of the Fifth Amendment made in a civil proceeding can be admitted into evidence in a subsequent criminal trial[,]" and our own research has also located no such case. But we disagree with the State's conclusion from the absence of such a case that the "alleged

10

inadmissibility of the evidence was not apparent." [11] We instead conclude that reasonably competent counsel would have objected to the prosecutor's use of the invocations. We base our holding upon: (1) the application of basic principles of Fifth Amendment jurisprudence to the precise circumstances of this case; and (2) a rejection of the State's use of the statement in *State v. Kinder*, 942 S.W.2d 313, 326 (Mo. banc 1996) that "evidence of a defendant's silence or refusal to answer questions is only disallowed if the defendant was in custody" because the State has taken that language out of context.[12]

The precise circumstances here are that the State affirmatively introduced the invocations as evidence in its case-in-chief, even though the criminal case was already pending at the time Movant, a party in the civil case, was deposed. The invocations were made in response to deposition questions about the allegedly forged deed and the circumstances surrounding it.

---

[11] The State does not argue on appeal that trial counsel's failure to object to the invocations was a part of a reasonable trial strategy. As our high court observed regarding a lawyer's failure to object to "post-*Miranda*" silence, "it is impossible to perceive any strategic reason why defense counsel would allow a prosecutor to admit and repeatedly refer to this damaging evidence, knowing that the evidence was constitutionally prohibited." *State v. Zindel*, 918 S.W.2d 239, 244 (Mo. banc 1996); *see also Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966) (discussing the procedural safeguards necessary for custodial interrogation).

[12] In *Kinder*, an officer interviewed the defendant and "asked [him] if he would swear on the Bible that he was not involved in [the victim's] death. [The officer] testified that [the defendant] said that he would, but that he refused to do so with his legs uncrossed." *Id.* at 325. In response to arguments that this testimony "was irrelevant and that its admission was a violation of due process and an improper comment on his constitutional right to remain silent[,]" the Court found that trial courts have "broad discretion" as to evidentiary relevance, the evidence was relevant to consciousness of guilt, and it "was not an improper comment on [the defendant's] right to remain silent" as the defendant "was not in custody at the time of the questioning." *Id.* at 326. As the defendant in *Kinder* did not actually exercise his right to remain silent, but instead made a statement about the circumstances under which he could swear he was innocent, the arguable basis for excluding the statement would have been unconstitutional circumstances surrounding the statement, not that the defendant had actually invoked the Fifth Amendment. There is no suggestion in *Kinder* that evidence of an individual's actual invocation of the Fifth Amendment is admissible simply because it was not made during a police officer's custodial interrogation. Further, cases drawing upon *Kinder* in the context of voluntary, non-custodial police interviews are distinguishable from this case because, as discussed *infra*, it involves an examination in a deposition. *See, e.g., State v. Edmonds*, 188 S.W.3d 119, 124-25 (Mo. App. S.D. 2006).

The State further argues that a negative inference may be drawn from an individual's invocation of the right against self-incrimination in a civil case, citing *In re Care & Treatment of Burgess*, 147 S.W.3d 822, 833 (Mo. App. S.D. 2004), but, of course, the trial at issue here was of a criminal case, and the Fifth Amendment right to refuse to be a witness against one's self expressly applies in the context of incrimination. *Burgess* does nothing to alter that fundamental guarantee. It instead reminds us that "[t]he longstanding rule has been that in a criminal proceeding, no negative inference may be made based on a defendant's failure to testify." *Id.*

11

These circumstances did not involve Movant *simply standing silent* in the face of a *non-custodial* interrogation by a law enforcement officer *before* being charged with a crime. *Cf. Salinas v. Texas*, 133 S.Ct. 2174, 2179 (2013) (because the petitioner did not invoke the Fifth Amendment during his noncustodial, pre-criminal charge interview, but instead remained silent in response to some questions, it was "unnecessary to reach [the] question" of "whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief"). *See also State v. Graves*, 27 S.W.3d 806, 812 (Mo. App. W.D. 2000) ("[w]hile the law in Missouri does permit the use of pre-*Miranda* silence to *impeach* a defendant's testimony and to contradict a defendant's defense, the adverse effect on the Fifth Amendment is *too severe to extend the use of post-arrest, pre-Miranda silence for affirmative proof of guilt*") (emphasis added). Further, a deposition is unlike a voluntary, noncustodial interview by a police officer in that the subject of the latter is free to decline to participate entirely or stop the interview at any time. *Cf. State ex rel. Chaney v. Franklin*, 941 S.W.2d 790, 792-93 (Mo. App. S.D. 1997) (discussing the "right" to take depositions and instances when relief or protective orders may be issued); Rule 57.03(a), (b), (e) and (h) (addressing the means of compelling attendance of a party deponent, a motion to terminate or limit an examination, and sanctions for failure to appear).

"[T]he privilege against self-incrimination" has been recognized as "the essential mainstay of our adversary system[.]" *Miranda*, 384 U.S. at 460. The State must not penalize a defendant in a criminal case for exercising his Fifth Amendment right to remain silent, *State v. Hutchinson*, 458 S.W.2d 553, 555 (Mo. banc 1970), and Mo. art. I, sec. 19 provides "practically identical" protection. *Id.* at 556. Section 546.270[13] and Rule 27.05 also prohibit reference "by

---

[13] RSMo 2000.

12

any attorney in the case" to, or consideration by the jury of, the fact that an accused did not testify, and the purpose of these provisions "are to keep *absolutely from the jury any reference to the constitutional right* [citing both constitutions] against self-incrimination." **State v. Barker**, 399 S.W.2d 1, 3 (Mo. 1966) (construing section 546.270 and a former version of Rule 27.05, Rule 26.08) (emphasis added). The protection applies during the entire trial, even during the *voir dire* process, to prohibit a prosecutor from commenting on the defendant's failure to testify in order to prevent the jury from focusing upon that very thing. **State v. Barnum**, 14 S.W.3d 587, 591-92 (Mo. banc 2000) (in which "general comments concerning the rights of *any* defendant in a criminal trial" did not result in manifest injustice) (emphasis added).[14]

The "privilege [against self-incrimination] exists whether or not a criminal charge is pending, and may be asserted in a civil proceeding." **State ex rel. Lieberman v. Goldman**, 781 S.W.2d 802, 805 (Mo. App. E.D. 1989); *see also* **State ex rel. North v. Kirtley**, 327 S.W.2d 166, 167 (Mo. banc 1959) ("[t]his state has frequently recognized that the constitutional privilege against self-incrimination is available to a witness before any tribunal and in any proceeding"). The right is available to a witness in a deposition. *See* **State ex rel. Pulliam v. Swink**, 514 S.W.2d 559, 560 (Mo. banc 1974). Further, the protection goes beyond questions regarding the bare elements of a criminal offense. "The privilege extends not only to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in the chain of evidence needed to convict the witness." **State ex rel. Munn v. McKelvey**, 733 S.W.2d 765, 768 (Mo. banc 1987).[15]

---

[14] This basic prohibition against commenting on the defendant's failure to testify and the purpose of this prohibition have been repeatedly stated. *See, e.g.*, **Davis v. State**, 453 S.W.3d 882, 886 (Mo. App. E.D. 2015); **State v. Chaddock**, 280 S.W.3d 164, 166 (Mo. App. S.D. 2009); **State v. Stites**, 266 S.W.3d 261, 269 (Mo. App. S.D. 2008); **State v. Boyd**, 91 S.W.3d 727, 731 (Mo. App. S.D. 2002); **State v. Pope**, 50 S.W.3d 916, 919-20 (Mo. App. W.D. 2001).

[15] Although the trial court did not find that Movant was asserting his right to remain silent "on the issue of guilt or innocence[,]" the motion court did not find (and the State does not contend on appeal) that the Fifth Amendment

13

Our cases have considered whether there has been a "direct and certain reference to failure of the accused to testify" by the prosecutor in a criminal trial, ***Hutchinson***, 458 S.W.2d at 555, although even an indirect reference "reasonably apt to direct the jury's attention to the defendant's failure to testify" may also be the basis for a reversal "if there is a calculated intent to magnify that decision so as to call it to the jury's attention." ***State v. Neff***, 978 S.W.2d 341, 344 (Mo. banc 1998). "Where an objection is made and overruled, a direct reference to the failure of the defendant to testify will almost invariably require reversal of the conviction[.]" ***Id.*** That is not to say that *any* "direct reference to the defendant's failure to testify mandates a mistrial[,]" *id.* at 345, as the appellate court also must consider the context of the comment. Apart from "egregious" cases, *Neff*, 978 S.W.2d at 346, "[p]rejudice that may occur from a direct reference to the defendant's failure to testify can normally be cured by an instruction to the jury." ***State v. Garrison***, 292 S.W.3d 555, 560 (Mo. App. S.D. 2009) (quotations omitted).

Just because we have been unable to uncover a Missouri opinion expressly holding that an invocation of the Fifth Amendment in a civil deposition may not be used by the State in its case-in-chief in a criminal prosecution does not mean that the prosecutor's doing so here was not clearly objectionable. *Cf. **Griffin***, 380 U.S. at 614 ("the Fifth Amendment outlaws" remnants of an inquisitorial system such as a "comment on the refusal to testify"); ***Hutchinson***, 458 S.W.2d at 555 (the defendant should not be punished in a criminal case for exercising the Fifth Amendment); and ***Graves***, 27 S.W.3d at 812 (the effect on the Fifth Amendment by affirmative proof of guilt via "post-arrest, pre-***Miranda*** silence" is "too severe" to be permitted).

---

was not properly invoked during the deposition. We find that the invocations were within the protections afforded by the constitutional right to remain silent as one question directly inquired about the allegedly forged deed and the other questions would have embraced answers furnishing "link[s] in the chain of evidence" proving the offense. ***Munn***, 733 S.W.2d at 768. The invocation of the privilege creates "a rebuttable presumption [that the] answer might tend to incriminate" the subject and rebuttal requires "a demonstration by the questioner that the answer cannot possibly have a tendency to incriminate the witness." ***Id.*** Further, the concern is "a crime[,]" as in "unlawful activities" and thus may "delve more deeply" than the original focus of the questioner. ***Id.***

14

We do not know from the record whether Movant had actually been arrested and "Mirandized" before his deposition was given, but it is significant that he specifically cited the Fifth Amendment in refusing to answer incriminating questions, and the criminal case was pending when his civil deposition was taken. At the time of the invocations, Movant's exposure to a criminal conviction had advanced beyond simply being arrested. *Actual evidence* presented by the prosecutor that Movant had refused to answer questions based upon the Fifth Amendment about the very document he is alleged to have forged is a much greater direction of the jury's attention to the fact that Movant had exercised his right not to testify than what would have flowed from a prohibited reference made during *voir dire*.

Based on these well-established, long-standing principles, and the absence of any identifiable reasonable trial strategy for not objecting, *cf.* ***Zindel***, 918 S.W.2d at 244 (no perceived trial strategy in allowing a prosecutor's admission and repeated reference to the defendant's post-Miranda silence), we believe the motion court clearly erred in implicitly finding that trial counsel "exercise[d] the level of skill and diligence that a reasonably competent counsel would in a similar situation," ***Johnson***, 388 S.W.3d at 163, when he failed to object as the invocations were offered into evidence by the prosecutor in the State's case-in-chief. In light of this finding, we must also review whether the motion court clearly erred in implicitly finding that Movant was not prejudiced by counsel's failure to object. ***Id.*** at 163.

The motion court incorrectly found, and the State incorrectly asserts, that Movant bore the burden of proving that the outcome of the trial *would have been different* but for trial counsel's deficiency. *See **Deck***, 68 S.W.3d at 426-28 (discussing why the prejudice standard for post-conviction relief is not an outcome-determinative one). Reversal is not warranted on direct appeal of a post-conviction matter unless there is "*a reasonable probability* that, but for

15

counsel's unprofessional errors, the result of the proceeding would have been different." *Johnson*, 388 S.W.3d at 162-63 (quotations omitted) (emphasis added). *See also **Hoeber v. State***, 488 S.W.3d 648, 657 (Mo. banc 2016) (quoting ***Deck***, 68 S.W.3d at 427-28) ("in reviewing a post-conviction relief case, 'the appropriate standard of prejudice should be somewhat lower' than that needed to establish plain error"). "The 'benchmark' for judging whether counsel is ineffective, however, is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" ***Dorsey v. State***, 156 S.W.3d 825, 835 (Mo. App. W.D. 2005) (quoting ***Deck***, 68 S.W.3d at 425); *see also **Hoeber***, 488 S.W.3d at 657.

In considering the effect of trial counsel's failure to object to the invocations, the fact that Movant later chose to testify at his trial did nothing to cure the prejudice Movant had already suffered from trial counsel's failure to object to the invocations. *Cf. **State v. Croka***, 646 S.W.2d 389, 391 (Mo. App. W.D. 1983), where the prosecutor stated in *voir dire* that the defendant would testify in the trial, and the appellate court reasoned that "[t]he statement to the jury is to be assessed by its effect at the time made." The appellate court found that the fact that the defendant ultimately testified did not "redeem" the error even if "there was never any doubt [the defendant] would testify[,]" and the error was not considered harmless. ***Id.*** This is not a direct appeal, but for purposes of assessing whether the failure to object resulted in a reasonable probability that the result would have been different, it is significant in the instant case that when the jury heard the invocations, they were presented as affirmative *evidence* of the criminal offense--indeed they may have been regarded as *nine* separate pieces of evidence--and no curative instruction was given either at the time of their admission or at any time thereafter.

16

Even when a prosecutor makes no comment on a defendant's exercise of his or her Fifth Amendment right, if the jury has not been "instructed otherwise" about a defendant's decision not to testify, the jury "may well draw adverse inferences from a defendant's silence" because the jury has been "left to roam at large with only its untutored instincts to guide it[.]" *Carter v. Kentucky*, 450 U.S. 288, 305 (1981) (a defendant is entitled to a "no adverse inferences" instruction upon a proper request); *cf.* MAI-CR 3d 308.14.1 (2008) (instructing the jury not to presume guilt or infer anything "from the fact that the defendant did not testify"). When a prosecutor makes a statement improperly referencing a defendant's exercise of the Fifth Amendment, we look to the instructions that restrained the jury from improperly considering the reference. *See* **Garrison**, 292 S.W.3d at 560.

The prosecutor's assertion that he would make no further reference to the invocations following Movant's request for mistrial[16] did nothing to correct the use that had already been made of Movant's post-charge exercise of his constitutional right to remain silent. Here, the jurors were instructed that a prosecutor's statements and arguments are not evidence, but they were not given any instruction that would have restrained their use of the testimony that revealed Movant had "pleaded the Fifth" when questioned about the allegedly forged deed. The natural inclination for some jurors to "implicitly equat[e] the plea of the Fifth Amendment with guilt is, in light of contemporary history, far from negligible." **Grunewald v. U.S.**, 353 U.S. 391, 424 (1957) ("it was prejudicial error for the trial judge to permit cross-examination of petitioner on his plea of the Fifth Amendment privilege before the grand jury"). "And Wigmore, among many others, made the same point: 'What inference does a plea of privilege support? The layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear

---

[16] We have found no further reference by the prosecutor to the invocations during the remainder of the trial.

confession of crime.' 8 J. Wigmore, Evidence § 2272, p. 426 (McNaughton rev. 1961)."

*Lakeside v. Oregon*, 435 U.S. 333, 340 n.10 (1978).

Any confidence we might otherwise have had in an assertion that the jury rejected the invocations as having no bearing on Movant's guilt (say in the presence of an oral or written admonition from the trial court that the jury must not consider it as evidence of guilt) is so seriously undermined by the manner in which it was received here that we believe the motion court clearly erred in concluding that Movant was not prejudiced by trial counsel's deficient performance. *See Dorsey*, 156 S.W.3d at 835.

The motion court's denial of post-conviction relief is reversed, Movant's conviction and sentence are vacated, and the case is remanded for a new trial.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – DISSENTS IN SEPARATE OPINION

WILLIAM W. FRANCIS, JR., J. – CONCURS


VERNON G. CHRISTIAN, )
)
    Movant-Appellant, )
)
vs. )        No. SD33998
)
STATE OF MISSOURI, )        **Filed: Sept. 2, 2016**
)
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Tony W. Williams, Associate Circuit Judge

**DISSENT**

I must respectfully dissent. This is an ineffective assistance of counsel claim. For counsel to be ineffective, he must have "failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation." ***Johnson v. State***, 388 S.W.3d 159, 163 (Mo. banc 2012). Despite that standard, the majority opinion concedes that the issue of whether the reading of a civil trial deposition which contained several references to the invocation of a Fifth Amendment right to remain silent is a matter of first impression. To decide this matter of first impression, the majority opinion must rely upon "the application of basic principles of Fifth Amendment jurisprudence to the precise circumstances of this case" and "a rejection of" a case cited by the State. The majority opinion evidently holds trial counsel to a

1

much higher level of diligence than a reasonably competent counsel.  Apparently, trial counsel should have anticipated this decision.  And, in fact, though trial counsel did not object at the time of the reading of the deposition, trial counsel did request a mistrial, which was denied by the trial court.  The majority opinion faults trial counsel for not requesting either a limiting instruction at the time of the reading or in the jury instructions.[1]

Furthermore, I do not think it is clear that the use of Movant's invocations of the Fifth Amendment in his civil deposition would have been inadmissible at the criminal trial when Movant chose to testify at the trial.  Prearrest silence and even post-arrest, but pre-*Miranda* or other similar, affirmative governmental assurance, silence is admissible to impeach a criminal defendant's trial testimony.  *Fletcher v. Weir*, 455 U.S. 603, 605-07 (1982); *State v. Chambers*, 330 S.W.3d 539, 542-44 (Mo.App. E.D. 2010) (setting forth Missouri rules for impeachment with post-arrest, but pre-*Miranda* warning, silence).  Moreover, the United States Supreme Court finds no constitutional fault even with permitting impeachment with the defendant's silence in a prior criminal trial that "ended in deadlock" in a second trial.  *Jenkins v. Anderson*, 447 U.S. 231, 235, 235-37 n.2 (1980) (appearing to reaffirm the Court's Fifth Amendment analysis in *Raffel v. United States*, 271 U.S.494 (1926)); *Mitchell v. United States*, 526 U.S. 314, 338 n.2 (1999) (Scalia, J., dissenting) (collecting relevant authorities on impeachment with pre- and post-arrest silence).  The cases cited in the majority opinion all concern the defendant's decision not to testify at the criminal trial.  Here, Movant chose to testify at the trial and did not invoke his right to remain silent.[2]

---

[1] As noted by the majority opinion, there are ample cases where there has been an inadvertent reference to a defendant not testifying **at trial** that are cured by a limiting instruction.

[2] Trial counsel testified that Movant made the decision to testify at his criminal trial at some point prior to trial.  The motion court found that testimony to be credible.  Movant does not complain in his point that he was forced to testify by the admission of the civil deposition.

2

More importantly, even if we were to decide that in the future any mention from a trial civil proceeding of an invocation of a Fifth Amendment right was error, we must analyze whether it is prejudicial. It is unnecessary to address both prongs of the *Strickland* test if Movant fails to meet his burden of proof on one prong, and, "[i]f it is easier to dispose of an ineffectiveness claim" based on Movant's failure to demonstrate prejudice, "that course should be followed." *Strickland v. Washington*, 466 U.S. 668, 670, 697 (1984); *see also **Taylor v. State***, 382 S.W.3d 78, 81 (Mo. banc 2012) (same).

First,

> 1. A person commits the crime of forgery if, with the purpose to defraud, the person: (1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority[.]

Section 570.090.1.[3]

Thus, the factual issues in this case before the jury were just two: whether Movant had signed King's name on the deed and whether he had done so with the purpose to defraud. The evidence against Movant in his criminal trial was overwhelming. King testified that he had never met Movant, had never agreed with Movant to sell or rent the property in question, and did not sign the deed Movant recorded. The notary testified by deposition that he notarized the deed at Movant's request even though the person who purportedly signed the deed was not present, and lost his notary license as a result. A handwriting expert testified that King did not sign his name on the deed, and that "everything" pointed to Movant signing King's name on the deed. The Recorder of deeds testified that Movant attempted to file a deed that had an incomplete notary seal on it and was rejected in that attempt by the Recorder. The very next day, Movant

---

[3] All references to statutes are to RSMo Cum. Supp. 2002, unless otherwise specified.

3

came back to the Recorder's office and filed the same deed but with a completed stamp on the front of the deed. Movant thus altered a writing twice.

Although the approximately two pages of Movant being asked by counsel if he was going to assert his Fifth Amendment right and Movant stating he would "stand on [his] Fifth Amendment" appears to be significant, I would note that the portion of Movant's civil deposition read to the jury comprised nearly nineteen pages of the trial transcript. In the remainder of the deposition read to the jury, Movant clearly sets forth his claim to the property through a tax sale, claims that he met with King and made an agreement regarding the rental of the property from Movant to King, and his recording of the deed. In fact, Movant can point to no specific question or answer by Movant that was prejudicial to him on this charge. Movant does not claim any particular question and answer was inadmissible but simply the acknowledgement in the deposition that Movant was going to claim a Fifth Amendment privilege to certain questions. As noted by the trial court in its consideration of Movant's criminal trial motion for a mistrial, none of Movant's invocations of the Fifth Amendment read before the jury directly related to whether he had signed King's name on the deed, or whether he had done so with the purpose to defraud -- the fact issues the jury was required to determine.[4] At his criminal trial, Movant specifically testified he did not sign King's name on the deed and did not know who had signed King's name. Movant also testified on the subjects he previously had declined to testify in his civil deposition. Movant's invocations of the Fifth Amendment in the civil deposition were not otherwise referenced before the jury, and the jury did not request to see Movant's civil deposition during its deliberations. Trial counsel was careful to clarify both with King during

---

[4] The judge who presided at Movant's criminal trial and imposed Movant's sentence also presided at Movant's post-conviction evidentiary hearing and denied Movant's request for post-conviction relief.

4

cross examination and with the jury in closing argument that the outcome of the civil suit was not the issue before the jury.

I would affirm the trial court on the basis that the motion court's finding that Movant failed to meet his burden of proof was not clearly erroneous. Movant failed to demonstrate a reasonable probability that, but for trial counsel's alleged unprofessional error in failing to object and seek a curative instruction to the reading of Movant's invocations of the Fifth Amendment in his civil deposition, the result of his criminal trial would have been different. I am not left with a definite and firm impression that a mistake has been made.


Nancy Steffen Rahmeyer, J. – Dissenting Opinion Author