

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,            )
                             )
    Plaintiff-Respondent,    )
                             )
v.                           )      No. SD35718
                             )      Filed:  October 9, 2019
VERNON G. CHRISTIAN,          )
                             )
    Defendant-Appellant.     )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Tony W. Williams, Circuit Judge

**<u>AFFIRMED</u>**

After a jury trial, Vernon Christian (Defendant) was convicted of the class C felony of forgery involving a warranty deed.  *See* § 570.090.[1]  Defendant appealed and presents one point for plain error review.  He contends the trial court plainly erred in allowing testimony about the victim's civil suit to recover title to the property at issue.  Finding no merit in this contention, we affirm.

Defendant was charged by information with forgery for events that occurred in November 2006.  He was convicted of this offense by a jury after a first trial in 2010.  That

---

[1]  All statutory references are to RSMo Cum. Supp. (2006).  All rule references are to Missouri Court Rules (2019).

conviction was subsequently vacated due to ineffective assistance of counsel, and the case was remanded for a new trial. *Christian v. State*, 502 S.W.3d 702, 714 (Mo. App. 2016). After a second trial held in February 2017, a jury again found Defendant guilty as charged. He was sentenced to serve six years in prison.

On appeal, we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Lopez-McCurdy*, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

In 2004, James King (King) and his brother bought real estate in Taney County, Missouri. There was an old rock cabin on the property, and King worked on it in his spare time to make it livable. King had an $80,000 mortgage on the property, and he made payments through an automatic withdrawal. In 2006, King bought his brother's share of the property. King started living on the property in 2007.

On November 23, 2006 (the Wednesday before Thanksgiving), Defendant brought a warranty deed to the recorder's office. The warranty deed purported to convey property rights of King to Defendant and Michael Olson (Olson) as joint tenants. Because the warranty deed had only a partial notary seal, however, the recorder refused to accept it. Defendant then brought the warranty deed back with a completed notary seal on the following Monday, November 27, 2006, and the warranty deed was recorded (hereinafter referred to as the Deed).

2

In November 2007, King did not receive a notification about the property taxes due on his property. Upon calling the collector's office, King learned that the collector's records showed he no longer owned the property. King sent a signature page to the collector's office so that his signature could be compared with the signature on the Deed. King also went to the police and wrote a statement that he signed.

King testified that he did not sell his property to Defendant. According to King: (1) he did not sign the Deed, entered into evidence as State's Exhibit 5; (2) he did not know the notary, Edmund E. Barker (Barker); (3) he did not sign the Deed in Barker's presence; and (4) he did not know Defendant or Olson. King continued to pay taxes on his property and received his title back only after hiring an attorney and going "[t]hrough a civil bench trial." Defense counsel did not object to this testimony.

Deputy Gary Hazell investigated the crime and obtained a written statement from Defendant. Another detective, David Rozell, compared Defendant's writing on the statement he gave to the police with the signature on the Deed. Detective Rozell determined that the Deed was not signed by King, but that Defendant wrote King's name on the Deed.

Don Lock, a forensic consultant, testified that "the evidence point[ed] toward [Defendant] as the writer of the questioned 'James King' signature" on the Deed. Barker testified that he notarized the warranty deed in King's absence and that he should not have done so.

David Fielder (Fielder), an attorney, testified that he represented King in a civil lawsuit between November of 2007 and February of 2009. King paid $7,724 for the representation. Defense counsel did not object to this testimony.

The State read Defendant's sworn testimony from a deposition taken by Fielder in 2008.[2]  According to Defendant, he purchased King's property at a tax sale in 1987 and lived on the property for 20 years.  Defendant stated that in 2007, he moved out of the property and rented it to King, who was "supposed to make improvements."  Defendant stated that Olson was his grandson, who was going to inherit the property when Defendant died.  Defendant claimed that he paid the property taxes in cash.

Defendant did not testify at trial and did not present any evidence.  During the State's closing argument, the prosecutor discussed Defendant's credibility and motive to steal the property by committing forgery:

> [Defendant] said, oh, [King's] just got to make some improvements to the property, and – and he just rents it from me.  Mister – Mr. King rents it from me. …
>
> [Defendant] is the only person in this case that has an op – has a motive and the – to steal this property.  Remember, he stole this property from Mr. King.  He's the only one that benefited from any of this.  Mister – Mr. King certainly didn't benefit.  In fact, as you heard from his attorney today, he was out seven thousand plus dollars dealing with this.  He had to have a trial.  He had to have an experienced 30 plus year attorney handle this case for him to get his own property returned to him.

The jury found Defendant guilty of forgery.  This appeal followed.

In Defendant's single point, he challenges admission of the testimony about King hiring an attorney to represent him in a civil lawsuit to restore title of his property.  Defendant acknowledges that he did not object to this testimony at trial and he did not include this issue in his motion for new trial.  Because Defendant failed to preserve this issue, he requests plain error review pursuant to Rule 30.20 (authorizing discretionary

---

[2]  Because both King and Barker were deceased at the time of the second trial, transcripts of their sworn testimony also were read to the jury.

review of "plain errors affecting substantial rights … when the court finds that manifest injustice or miscarriage of justice has resulted therefrom"). "Plain error review is utilized sparingly, and a defendant seeking such review bears the burden of showing that plain error has occurred." *State v. Lloyd*, 205 S.W.3d 893, 906-07 (Mo. App. 2006). Plain error review involves a two-step process. *Id*. at 907. First, the Court determines whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id*. "Plain errors are evident, obvious, and clear," and the Court determines whether such errors exist based on the facts and circumstances of each case. *Id*. If plain error is found, the Court proceeds to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id*.

Defendant contends the "trial court plainly erred in allowing the State to adduce evidence regarding the civil suit over the title to the property, including the fees paid by James King, how long the suit took, and the result of the lawsuit[.]" According to Defendant, "such evidence was legally and logically irrelevant and was therefore inadmissible. A manifest injustice resulted because the jury considered the result of the civil suit in determining whether [Defendant] was guilty of forgery and evidence concerning the length and cost of the civil suit would have inflamed the passions of the jurors against [Defendant]." We disagree.

"Evidence must be relevant to be admissible." *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010). "In Missouri, the general rule is that relevance is two-tiered: logical and legal." *Id*.; *see also State v. Blurton*, 484 S.W.3d 758, 777 (Mo. banc 2016). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. *Anderson*, 306 S.W.3d at 538. Logically relevant evidence also must be legally relevant

5

to be admissible.  *Id*.  "Legal relevance weighs the probative value of the evidence against its costs – unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness."  *Id*.  If the prejudicial effect of the logically relevant evidence outweighs its probative value, the evidence should be excluded.  *Id*.  Further, even if certain evidence is inadmissible, "[t]there are several exceptions under which otherwise inadmissible evidence may be admitted."  *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012).  Such evidence may be admissible if it tends to establish, *inter alia*:  (1) motive; (2) intent; and/or (3) circumstances or sequence of events surrounding the offense charged to present a complete and coherent picture of the events that transpired.  *Id*. at 473-74; *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011).

Here, we conclude there was no error, plain or otherwise, in admitting the challenged testimony in evidence.  The steps King had to take to restore the title to his property were relevant and admissible to show Defendant's motive, intent and purpose to defraud.  *See Miller*, 372 S.W.3d at 473-74.  The State had to prove that Defendant made a writing purported to be made by another with the purpose to defraud.  § 570.090.1.[3]  The fact that King hired an attorney to file a civil lawsuit to restore the title to his property and that it cost King $7,724 was logically and legally relevant.  It was logically relevant because it corroborated King's testimony that he was the rightful owner of the property.  It was legally relevant because its probative value outweighed any prejudicial impact, in that it

---

[3]  Under § 570.090.1(1), "[a] person commits the crime of forgery if, with the purpose to defraud, the person:  [m]akes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority[.]"  *Id*.  At trial, defense counsel argued that it was not Defendant who signed the Deed.

directly addressed other evidence suggesting that: (1) King sold the property to Defendant; and (2) King was renting the property from Defendant. Thus, the challenged evidence was admissible to support King's claim that he was the rightful owner of the property and to support the State's theory that Defendant forged the Deed that he presented to the recorder. In addition, the challenged evidence showed the circumstances or sequence of events surrounding the offense charged to present a complete and coherent picture of the events that transpired. *See Miller*, 372 S.W.3d at 474. Therefore, evidence concerning the civil lawsuit was also relevant and admissible to explain to the jury what happened after Defendant recorded the Deed and to show how King regained his property rights.

In support of Defendant's argument, he relies on *State v. Griffin*, 289 S.W.2d 455, 457 (Mo. App. 1956), but that case is factually distinguishable. In *Griffin*, the defendant was convicted of the unlicensed practice of dentistry. The State presented evidence from a civil suit resulting in an injunction restraining the defendant from practicing dentistry five years before trial on the underlying charge. *Id*. at 458. The trial court instructed the jury that such evidence was not to be received as evidence of guilt but could only be received for the purpose of determining the defendant's credibility. *Id*. The eastern district of this Court reversed the conviction because:

> [E]vidence of prior criminal acts subject to exceptions, not here present, are not as a general rule admissible. In view of this, the result of the civil suit five years before should not have been admitted for any purpose. As it was quite remote in time and in no way related to the charge upon which the defendant was being tried, it was error to instruct the jury that they could consider it to determine the credibility of the defendant's testimony.

*Id*. at 458-59 (citations omitted). The case at bar does not present the same issue. Here, the testimony about King's civil suit did not involve a prior criminal act. Instead, it directly involved the circumstances of the charged crime of forgery. The challenged testimony

7

directly related to evidence showing that Defendant had claimed ownership of the property. Thus, the challenged evidence was admissible to prove that King was the rightful owner of the property and that he was required to bring a civil action to restore his property rights.[4]

In sum, the trial court committed no error, plain or otherwise, in admitting the challenged evidence. Defendant's point is denied, and the judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

DON E. BURRELL, J. – CONCUR

---

[4] Defendant also relies on *State v. Jackson*, 155 S.W.3d 849 (Mo. App. 2005), but that case is inapposite. *Jackson* involved plain error during closing argument when the prosecutor "committed a gross misrepresentation of the State's burden of proof amounting to manifest injustice." *Id*. at 854. We have no such issue here.